# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| DEBRA M. ADAMS, DANILLIE L. MARS, MICHELLE L. MILLER and ANITA W. DAME, individually and on behalf of all others similarly situated, | ) ) ) ) ) | **CIVIL ACTION NO.: 1:22-cv-00099** |
| Plaintiff, | ) | |
| v. | ) ) | |
| DARTMOUTH-HITCHCOCK CLINIC, THE BOARD OF TRUSTEES OF DARTMOUTH-HITCHCOCK CLINIC, THE ADMINISTRATIVE INVESTMENT OVERSIGHT COMMITTEE OF DARTMOUTH-HITCHCOCK CLINIC and JOHN DOES 1-30. | ) ) ) ) ) ) ) ) | |

Defendants.

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................1

II.    STANDARD OF REVIEW ................................................................................4

III.   STATEMENT OF FACTS ................................................................................5

      A.    The Totality of the Circumstances Demonstrates that the Plans' Fiduciaries Failed to Administer the Plans in a Prudent Manner ................................................6

           1.    The Plans' Investment Management Costs Were Higher than Those of Their Peers ................................................6

           2.    The Plans' Recordkeeping and Administrative Costs Were Excessive During the Class Period ................................................6

           3.    Several of the Funds in the Plans had Lower Cost Better Performing Alternatives in the Same Investment Style ................................................8

IV.   ARGUMENT ................................................................................9

      A.    Plaintiffs Have Adequately Alleged Their Standing to Pursue Claims Related to the Imprudent Management of the Plans' Funds ................................................9

      B.    Defendants Breached Their Duty of Prudence By Implementing a Flawed Process for Selecting the Plans' Investment Options ................................................10

           1.    The Fee Benchmarks and Performance Comparisons for the Plans' Funds are Plausibly Alleged ................................................11

                 i.    The ICI is a Useful Measurement ................................................12

                 ii.    The Performance of the Plans' Funds Fell Well Short of Acceptable Industry Standards ................................................13

                 iii.    Under the Prevailing Circumstances Defendants Were Required to Investigate the Prudence of Offering Other Lower Cost, Better Performing Investment Options ................................................14

                 iv.    Whether Plaintiffs' Comparators are Meaningful Comparators for the Challenged Plan Funds is Not Suitable for Resolution at the Motion to Dismiss Stage ................................................15

      C.    Defendants Breach Their Fiduciary Duties in Failing to Monitor the Plan's Recordkeeping Fees ................................................16

i

1.   Defendants' Challenge to the Complaints' Plan Comparators Are Meritless .......................................................................................... 17

2.   The Complaints' Allegations regarding Fee Estimates Are Well-Pled ........ 21

3.   Facts Regarding The Fidelity Plan Are Relevant Under the Circumstances 23

4.   Defendants Failed to Adequately Stay Informed About Overall Trends in the Market Place Regarding Recordkeeping Fees ........................................ 24

5.   The Plans' Recordkeeping Fees Were Excessive Based on Market Comparisons ................................................................................................. 24

D.   The Complaint Alleges Sufficient Facts to State A Claim for Failure to Monitor 25

V.   CONCLUSION ............................................................................................. 25

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Albert v. Oshkosh Corp.*,
2021 WL 3932029 (E.D. Wis. Sept. 2, 2021),
*appeal filed* (7th Cir. Oct. 1, 2021) ........................................................................... 20

*Allison v. L Brands, Inc.*,
2021 WL 4224729 (S.D. Ohio Sept. 16, 2021) ........................................................ 18

*Bangalore v. Froedtert Health, Inc.*,
2022 WL 227236 (E.D. Wis. Jan. 26, 2022) ............................................................. 3

*Barchock v. CVS Health Corp.*,
886 F.3d 43 (1st Cir. 2018) ........................................................................................ 21

*Bell v. Pension Comm. of ATH Holding Company, LLC*,
2017 WL 1091248 (S.D. Ind. March 23, 2017) ........................................................ 24

*Birse v. CenturyLink, Inc.*,
2019 WL 1292861 (D. Colo. Mar. 20, 2019) ............................................................ 12

*Bouvy v. Analog Devices, Inc.*,
2020 WL 3448385 (S.D. Cal. June 24, 2020) ........................................................... 13

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ............................................................................... Passim

*Brotherston v. Putnam Investments, LLC et al.*,
2016 WL 1397427 (D. Mass. Apr. 7, 2016) ........................................................... 4, 5

*Cassell v. Vanderbilt Univ.*,
285 F.Supp.3d 1056 (M.D. Tenn. 2018) ............................................................. 15, 19

*Coviello et al. v. BHS Management, Inc. et al.*,
No. 3:20-cv-30198 (D.Mass. June 9, 2022) ..................................................... 3, 4, 17

*Cruz-Acevedo v. Toledo-Davila*,
660 F.Supp.2d 205 (D.P.R. 2009) ............................................................................. 6

*Cryer v. Franklin Templeton Resources Inc.*,
2017 WL 818788 (N.D. Cal. Jan. 17, 2017) ........................................................ 13, 15

iii

*Cunningham v. Cornell Univ.*,
2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017)................................................................ 6

*Cunningham v. Cornell Univ.*,
2019 WL 4735876 (S.D.N.Y. Sept. 27, 2019).............................................................. 14

*Cunningham v. USI Insurance Services, LLC.*,
2022 WL 889164 (S.D.N.Y. Mar. 25, 2022) ............................................................... 22

*Davis v. Magna Int'l. of Am., Inc.*,
2021 WL 1212579 (E.D. Mich. Mar. 31, 2021) ............................................... 13, 15, 18

*Davis, et al. v. Washington U. in St. Louis*,
960 F.3d 478 (8th Cir. 2020) ........................................................... 5, 11, 12, 16

*Divane v. Northwestern Univ.*,
953 F.3d 980 (7th Cir. 2020) ........................................................................ 20

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019)............................................................. 19

*Fifth Third Bancorp et al. v. Dudenhoeffer, et al.*,
573 U.S. 409 (2014)....................................................................................... 17

*Forman v. TriHealth, Inc.*,
2021 WL 4346764 (S.D. Ohio Sept. 24, 2021),
*appeal filed*, No. 21-3977 (6th Cir. Oct. 25, 2021)..................................................... 20

*Garcia v. Alticor, Inc.*,
No. 1:20-cv-01078-PLM-PJG (W.D. Mich. Aug. 9, 2021)........................................... 1

*García-Catalán v. United States*,
734 F.3d 100 (1st Cir. 2013)........................................................................ 4

*George v. Kraft Foods Glob., Inc.*,
641 F.3d 786 (7th Cir. 2011) ....................................................................... 24

*Goodman v. Columbus Regional Healthcare Sys., Inc.*,
2022 WL 228764 (M.D. Ga. Jan. 25, 2022) ................................................................ 2

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ....................................................................... 20

*Hughes v. Northwestern Univ.*,
142 S.Ct. 737 (2022)....................................................................... 2, 3, 5, 20

iv

*Hughes v. Northwestern Univ.*,
No. 19-1401 (May 25, 2021) ........................................................................... 5, 14

*Johnson et al. v. The PNC Financial Services Group, Inc. et al.*,
No. 2:20-CV-01493 (W.D. Pa. Mar. 31, 2022) ..................................................... 1, 25

*Karg v. Transamerica Corp.*,
2019 WL 3938471 (N.D. Iowa Aug. 20, 2019) .......................................................... 25

*Karpik v. Huntington Bancshares, Inc.*,
2019 WL 7482134 (S.D. Ohio Sept. 26, 2019) .......................................................... 19

*Kendall v. Pharmaceutical Product Development, LLC*,
2021 WL 1231415 (E.D. Pa. Mar. 31, 2021) .............................................................. 18

*Khan et al. v. PTC, Inc. et al.*,
No. 1:20-cv-11710-WGY (D. Mass. Mar. 31, 2021) .................................................. 3, 9

*Khan v. PTC, Inc.*,
2021 WL 1550929 (D. Mass. April 20, 2021) .............................................................. 9

*Kong v. Trader Joe's Co.*,
2020 WL 7062395 (C.D. Cal. Nov. 30, 2020) .............................................................. 3

*Kong v. Trader Joe's Co.*,
2022 WL 1125667 (9th Cir. Apr. 15, 2022) ................................................................. 3

*Krueger v. Ameriprise Financial, Inc.*,
2012 WL 5873825 (D. Minn. Nov. 20, 2012) .............................................................. 19

*Kruger v. Novant Health, Inc.*,
131 F.Supp.3d 470 (M.D.N.C. 2015) ........................................................................ 18

*Kurtz v. The Vail Corp.*,
2021 WL 50878 (D. Colo. Jan. 6, 2017) ..................................................................... 11

*LaRue v. De Wolff, Boberg & Assoc., Inc.*,
552 U.S. 248 (2008) .................................................................................................. 2

*Lorenz v. Safeway*,
241 F.Supp.3d 1005 (N.D. Cal. 2017) ........................................................................ 14

*Main v. Am. Airlines, Inc.*,
248 F.Supp.3d 786 (N.D. Tex. 2017) ......................................................................... 13

*Marks v. Trader Joe's Co.*,
2020 WL 2504333 (C.D. Cal. Apr. 24, 2020) ............................................................. 3

*Marshall v. Northrop Grumman Corp.*,
2019 WL 4058583 (C.D. Cal. Aug. 14, 2019) ........................................................... 15

*Martin v. CareerBuilder*,
2020 WL 3578022 (N.D. Ill. July 1, 2020) ............................................................... 21

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985) ...................................................................................................... 2

*Matney v. Barrick Gold of N. Am., Inc.*,
2022 WL 1186532 (D. Utah Apr. 21, 2022) ............................................................... 3

*Mator v. Wesco Distribution, Inc.*,
2021 WL 452349 (W.D. Pa. Oct. 4, 2021) ............................................................... 23

*McCool v. AHS Mgmt. Company, Inc.*,
2021 WL 826756 (M.D. Tenn. Mar. 4, 2020) ............................................. 13, 15, 19

*McGowan v. Barnabas Health, Inc.*,
2021 WL 1399870 (D.N.J. Apr. 13, 2021) ............................................................... 10

*Meiners v. Wells Fargo & Co.*,
2017 WL 2303968 (D. Minn. May 25, 2017) ........................................... 11, 12, 16, 21

*Miller v. Autozone, Inc.*,
2020 WL 6479564 (W.D. Tenn. Sept. 18, 2020) ...................................................... 16

*Moitoso et al. v. FMR, et al.*,
451 F.Supp.3d 189 (D.Mass. 2020) ......................................................................... 23

*Moore et al. v. Humana, Inc. et al.*,
No. 3:21-cv-00232-RG (W.D.Ky. Mar. 31, 2022) ................................................. 1, 19

*New Orleans Employers Int'l Longshoremen's Ass'n, AFL-CIO Pension Fund v. Mercer Inv. Consultants*,
635 F. Supp. 2d 1351 (N.D. Ga. 2009) .................................................................... 14

*Nicolas v. Trustees of Princeton Univ.*,
2017 WL 4455897 (D.N.J. Sept. 25, 2017) ......................................................... 13, 15

*Perkins v. United Surgical Partners Int'l, Inc.*,
2022 WL 824839 (N.D. Tex. March 18, 2022) ........................................................ 23

*Peterson v. Ins. Servs. Office, Inc.*,
2021 WL 1382168 (D.N.J. April 13, 2021) ................................................................ 22

*Pinnell v. Teva Pharmaceuticals USA, Inc.*,
2020 WL 1531870 (E.D. Pa. Mar. 31, 2020) ....................................................... 13, 14

*Ramos v. Banner Health*,
2017 WL 4337598 (D. Colo. Sept. 29, 2017) ............................................................ 24

*Rivera v. Marriott Int'l, Inc.*,
456 F.Supp.3d 330 (D.P.R. 2020) ............................................................................... 6

*Rosenkranz v. Altru Health Sys.*,
2021 WL 5868960 (D.N.D. Dec. 10, 2021) ................................................................ 22

*Sacerdote et al. v. New York Univ.*,
9 F.4th 95 (2d Cir. 2021) .......................................................................................... 17

*Savage v. Sutherland Global Services, Inc.*,
2021 WL 726788 (W.D.N.Y. Feb. 25, 2021) ............................................................... 6

*Sepulveda-Villarini v. Dept. of Educ. Of Puerto Rico*,
628 F.3d 25 (1st Cir. 2010) .......................................................................................... 4

*Shaw v. Quad/Graphics, Inc.*,
2022 WL 227502 (E.D. Wis. Jan. 26, 2022) ................................................................ 3

*Short v. Brown U.*,
320 F.Supp.3d 363 (D.R.I. July 11, 2018) ............................................................ 3, 24

*Silva v. Evonik Corp.*,
2020 U.S. Dist. LEXIS 250206 (D.N.J. Dec. 30, 2020) ....................................... 12, 15

*Smith v. CommonSpirit Health*,
2021 WL 4097052 (E.D. Ky. Sept. 8, 2021),
*appeal filed*, No. 21-5964 (6th Cir. Oct. 14, 2021) ................................................... 20

*Smith et al. v. VCA, Inc., et al.*,
No. 21-9140-GW-AGRx6 (C.D. Cal. Apr. 6, 2022) .................................................... 25

*Starbrands Capital, LLC v. Original MW, Inc.*,
2015 WL 13691435 (D. Mass. Aug. 14, 2015) ............................................................ 6

*Stark v. Keycorp*,
2021 WL 1758269 (N.D. Ohio May 4, 2021) ....................................................... 18, 22

*Sweda v. Univ. of Pennsylvania,*
923 F.3d 320 (3d Cir. 2019).................................................................. 5, 19, 22

*Tibble v. Edison Int'l,*
135 S. Ct. 1823 (2015)......................................................................... 14, 20

*Tibble v. Edison Int'l,*
575 U.S. 523 (2015)..................................................................................... 5

*Tracey et al. v. MIT,*
2017 WL 4478239 (D.Mass. Oct. 4, 2017)................................................. 3

*Velazquez v. Mass. Fin. Servs. Co. et al.,*
320 F.Supp.3d 252 (D. Mass. 2018) ......................................................... 3

*Wehner v. Genentech, Inc.,*
2021 WL 507599 (N.D. Cal. Feb. 9, 2021) .............................................. 16

*White, et al. v. Chevron Corp.,*
2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) .......................................... 16

*White v. Chevron Corp.,*
2017 WL 2352137 (N.D. Cal. May 31, 2017) ........................................... 14

*Wilcox v. Georgetown Univ.,*
2019 WL 132281 (D.D.C. Jan. 8, 2019) .................................................. 19

*Wildman v. Am. Century Servs., LLC,*
No. 4:16–737, 2017 WL 839795 (W.D. Mo. Feb. 27, 2017) ..................... 11

*Williams v. Centerra Group, LLC,*
2021 WL 4227384 (D.S.C. Sept. 16, 2021)............................................... 22

*Young v. GM Inv. Mgmt. Grp.,*
325 F. App'x 31 (2d Cir. 2009) ............................................................... 19

**Statutes**

29 U.S.C. §1109 ........................................................................................ 10

29 U.S.C. §1132(a)(2) ............................................................................... 10

Fed. R. Civ. P. 8(a)(2)............................................................................... 22

**Other Sources**

*Assembling a Robust Investment Policy Statement for Endowments and Foundations*,
THE PNC FINANCIAL SERVICES GROUP, INC., Jan. 8, 2020............................................. 14

The Employee Retirement Income Security Act of 1974 .............................................................. 2

Plaintiffs Debra M. Adams, Daniellie L. Mars, Michelle L. Miller, and Anita W. Dame (collectively, the "Plaintiffs"), by and through their attorneys, respectfully submit this opposition to Defendants'[1] Motion to Dismiss.[2]

## I.    INTRODUCTION

Defendants imply that the allegations in this case are infirm because Plaintiffs' counsel have filed several other similar actions across the country.  This is empty rhetoric.  One court aptly remarked in reference to Capozzi Adler, "[t]here is no rule against hiring counsel that specialize in one cause of action or type of lawsuit, and the Court declines to dismiss the complaint on this ground alone."  *Garcia v. Alticor, Inc.*, No. 1:20-cv-01078-PLM-PJG (ECF No. 22), at *6 (W.D. Mich. Aug. 9, 2021) (attached to Gyandoh Decl. as Ex. 1).  Defendants fail to note that many of these actions filed by the undersigned counsel have survived motions to dismiss on their merits, including one recent lawsuit where the Court upheld analogous allegations to those pled here. *See Moore et al. v. Humana, Inc. et al*., No. 3:21-cv-00232-RG, slip op. (W.D.Ky. Mar. 31, 2022) (attached to Gyandoh Decl. as Ex. 2) (upholding allegations of excessive recordkeeping and administration costs where "Plaintiffs include a chart comparing similarly situated plans, including a comparison of number of participants, amount of assets, and recordkeeping fees paid.").  Another recent decision in a suit filed by another firm upheld similar allegations.  *See Johnson et al. v. The PNC Financial Services Group, Inc. et al.*, No. 2:20-CV-01493, slip op. at 8 (W.D. Pa. Mar. 31,

---

[1] "Defendants" refers to Dartmouth-Hitchcock Clinic ("Dartmouth"), The Board of Trustees of Dartmouth-Hitchcock Clinic (the "Board"), The Administrative Investment Oversight Committee of Dartmouth-Hitchcock Clinic (the "Committee"), and John Does 1-30.

[2] Memorandum in Support of Defendants' Motion to Dismiss (ECF No. 22-1) is referred to herein as "Defs. Mem."  All references to "¶" or "Complaint" are to the Class Action Complaint (ECF No. 1).

2022) (attached to Gyandoh Decl. as Ex. 3) (upholding excessive recordkeeping and administrative cost claims).

The purpose of this suit isn't to simply survive a motion to dismiss.  Plaintiffs and their counsel seek to hold Defendants accountable to the high standard of fiduciary conduct under the Employee Retirement Income Security Act ("ERISA").  There is one common thread in the Complaint here and others filed by Plaintiffs' counsel.  That is, the defendant-fiduciaries in these cases saddled the participants in the Plans[3] with, *inter alia*, unreasonably high fees for the Plans' recordkeeping and administrative services.  The Supreme Court has noted that in enacting ERISA, "the crucible of congressional concern was misuse and mismanagement of plan assets by plan administrators and that ERISA was designed to prevent these abuses in the future." *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 141 n. 8 (1985).  Because "[d]efined contribution plans dominate the retirement plan scene today" it is important now more than ever to uphold ERISA's standards. *LaRue v. De Wolff, Boberg & Assoc., Inc.*, 552 U.S. 248, 255 (2008).  Nor does it matter whether a plan is a 403(b) plan or 401(k) plan.  Both types of plans have the same fundamental purpose: allowing employees to save for a secure retirement.  The duties of fiduciaries in both are the same: to operate as a financial expert familiar with investment practices, to operate the plan for the exclusive benefit of employees and retirees, and to make sure that fees are reasonable and investments are prudent.

Following the Supreme Court's recent *Hughes v. Northwestern Univ.*, 142 S.Ct. 737 (2022) decision, several courts have cited *Hughes* in denying motions to dismiss complaints alleging similar claims like what is alleged in the Complaint.  *See, e.g., Goodman v. Columbus Regional*

---

[3] "Plan" or "Plans" refers to the Dartmouth-Hitchcock Retirement Plan and the Dartmouth-Hitchcock Employee Investment Plan.  Capitalized and undefined terms herein shall be ascribed the same meaning provided in the Complaint.

*Healthcare Sys., Inc.*, 2022 WL 228764, at *3 (M.D. Ga. Jan. 25, 2022) (alleging that defendant's "recordkeeper received fees that were nearly double what a reasonable recordkeeping fee would have been for a similarly sized ERISA plan" and that the "recordkeeper received additional indirect compensation that was excessive and should have been more carefully scrutinized by a prudent plan fiduciary."); *Shaw v. Quad/Graphics, Inc.,* 2022 WL 227502 (E.D. Wis. Jan. 26, 2022) similarly dismissed defendants' motion to dismiss in light of the *Hughes* decision. *Shaw*, 2022 WL 227502, at *1 (denying defendants' motion to dismiss without prejudice in light of the *Hughes* decision); *see also Bangalore v. Froedtert Health, Inc.*, 2022 WL 227236, at *1 (E.D. Wis. Jan. 26, 2022) (same).[4]

    Given this overwhelming weight of authority, many of Defendants' arguments fall flat. Importantly, Plaintiffs' claims are substantially similar to those that have been upheld by the overwhelming majority of judges within the First Circuit.[5]  In fact, one court within this Circuit recognized that "[i]n factually complex ERISA cases" like the instant case, "dismissal is often

---

[4] Defendants cite repeatedly to *Matney v. Barrick Gold of N. Am., Inc.*, 2022 WL 1186532 (D. Utah Apr. 21, 2022).  The court in *Matney* relied on pre-*Hughes* case law and the Central District of California's decision in *Marks v. Trader Joe's Co.*, 2020 WL 2504333, at *6 (C.D. Cal. Apr. 24, 2020), which is no longer good law given that the *Marks* decision was decided by the same judge on the same basis as *Kong v. Trader Joe's Co.*, 2020 WL 7062395 (C.D. Cal. Nov. 30, 2020). The Ninth Circuit recently reversed the *Kong* decision.  *See Kong v. Trader Joe's Co.*, 2022 WL 1125667 (9th Cir. Apr. 15, 2022).  The plaintiffs in *Matney* filed a Rule 59(e) motion for reconsideration of the court's order dismissing the complaint, *Matney v. Barrick Gold of N. Am., Inc.*, No. 2:20-cv-00275-TC (ECF No 63) (D. Utah May 19, 2022), and are concurrently appealing the decision to the Tenth Circuit.  *See Matney v. Barrick Gold of N. Am.* (10th Cir. May 20, 2022).

[5] *See, e.g., Coviello et al. v. BHS Management, Inc. et al.*, No. 3:20-cv-30198 (D.Mass. June 9, 2022) (ECF No. 77 (denying motion to dismiss complaint in excessive suit action); *Khan et al. v. PTC, Inc. et al.*, No. 1:20-cv-11710-WGY, ECF 34 (D. Mass. Mar. 31, 2021) (denying motion to dismiss excessive recordkeeping and administrative fee claim in part on the record without an opinion); *Short v. Brown U.*, 320 F.Supp.3d 363 (D.R.I. July 11, 2018) (upholding excessive fee claim); *Velazquez v. Mass. Fin. Servs. Co. et al.*, 320 F.Supp.3d 252 (D. Mass. 2018) (same); *Tracey et al. v. MIT*, 2017 WL 4478239, * 2 (D.Mass. Oct. 4, 2017) (same).

inappropriate" at the motion to dismiss stage. *Brotherston v. Putnam Investments, LLC et al.*, 2016 WL 1397427, at * 1 (D. Mass. Apr. 7, 2016) (denying motion to dismiss in "excessive fee" suit).

Here, the Plans paid far in excess of reasonable rates for a large asset value plan when looking at other comparably-sized plans.  Because the collective Plans were one of the largest plans in the country with over $1 billion dollars in assets and tens of thousands of participants, the Plans' fiduciaries had substantial bargaining power to negotiate and obtain some of the best pricing available in the market for Plan services.[6]  ¶ 10.  For these and other reasons set forth below, Defendants' motion must be denied.

## II.    STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6) in any action, "the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor."  *Sepulveda-Villarini v. Dept. of Educ. Of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010).  When assessing a complaint, courts should provide "some latitude" when "a material part of the information needed is likely to be within the defendant's control" and "it cannot reasonably be expected" plaintiffs would have access to such information without discovery.  *García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013) (internal citations omitted).  This is especially true in cases like this one concerning breach of fiduciary duty under ERISA where plaintiffs "generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009); *see also Coviello*, No. 3:20-cv-30198 (D.Mass. June 9, 2022) (ECF No. 77 (finding *inter alia*, that "Plaintiffs allege they

---

[6] According to ERISApedia, in 2020 there were only 198 defined contribution plans (401k, 401a, and 403b) with 15,000 to 19,999 participants with account balances.  For plans with 20,000 to 29,999 participants there were only 194 of such plans.  And for plans with 30,000 to 39,000 participants only 90 of those plans existed.  ERISApedia is a paid service that compiles all form 5500 filings from the DOL.

unsuccessfully sought from Defendants Plan-related documents under ERISA Section 104(b)(4) prior to filing suit."); *Brotherston*, 2016 WL 1397427, at * 1.

The Supreme Court's recent decision in *Hughes v. Northwestern Univ.*, reinforces the above pleading standard. *Hughes* vacated a decision that was at odds with the Third and Eighth Circuit's decisions in *Sweda v. Univ. of Pennsylvania,* 923 F.3d 320 (3d Cir. 2019) and *Davis, et al. v. Washington U*., 960 F.3d 478 (8th Cir. 2020). *See* Br. for the United States as Amicus Curiae at 17, *Hughes v. Northwestern Univ.*, No. 19-1401 (May 25, 2021)[7] ("the decision below conflicts with decisions of the Third and Eighth Circuits, both of which have held that very similar complaints—alleging that defendants offered retail-class investment shares instead of available institutional-class shares, and paid excessive recordkeeping fees in universities' Section 403(b) plans— stated claims for relief under ERISA.")

Additionally, *Hughes* implores lower courts to apply the teachings of *Tibble v. Edison Int'l*, 575 U.S. 523, 529-530 (2015) where the Supreme Court "interpreted ERISA's duty of prudence in light of the common law of trusts and determined that 'a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones.'" *Hughes*, 2022 WL 199351, at *3-4 (quoting *Tibble*, 575 U.S. at 530). This duty includes controlling plan costs. *See* Complaint, ¶ 4 (citing Uniform Prudent Investor Act, § 7). Lastly, the dicta in *Hughes* that lower courts must give consideration of "reasonable judgments a fiduciary may make" at best suggests the scope of "judgments" ought to be taken up at summary judgment.

### III.    STATEMENT OF FACTS[8]

---

[7] https://www.supremecourt.gov/DocketPDF/19/19-1401/180105/20210525160954238_19-1401%20Hughes%20-%20US%20invitation%20brief%20final.pdf

[8] Defendants ask this Court to take judicial notice of close to 520 pages of documents, which they submitted as exhibits along with their Motion to Dismiss. *See* ECF Nos. 22-3 through 22-19. "The effect of judicial notice 'is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence" and thus a Court must be cautious when

**A.  The Totality of the Circumstances Demonstrates that the Plans' Fiduciaries Failed to Administer the Plan in a Prudent Manner**

**1.  The Plans' Investment Management Costs Were Higher than Those of Their Peers**

From 2016 to 2020, at least four of the funds which appear in both the 401(a) and 403(b) Plans had excessive expense ratios when compared to their peers.  ¶¶ 65, 67.  The expense ratio for one of these funds during the Class Period was 150% above the ICI Median (in the case of Sound Short Institutional) and in another case the expense ratio was 123% above the ICI Median (in the case of T. Rowe Price Instl Small-Cap Stock) in the same category.  *Id.*  The high cost of the Plans' funds is also evident when comparing the Plans' funds to the median and average fees of funds in similarly-sized plans.  ¶¶ 65-66.

**2.  The Plans' Recordkeeping and Administrative Costs Were Excessive During the Class Period**

The Plans' recordkeeper during the Class Period is/was T. Rowe Price.  ¶ 86.  Nearly all recordkeepers provide the same range of recordkeeping services at very little cost to all large defined contribution plans.  ¶¶ 70-74.  Plans with large numbers of participants can take advantage of economies of scale and negotiate a lower per-participant recordkeeping fee.  *Id.*  During the

---

"determining that a fact is beyond controversy under Rule 201(b).'"  *Rivera v. Marriott Int'l, Inc.*, 456 F.Supp.3d 330, 338 (D.P.R. 2020) (citing *Cruz-Acevedo v. Toledo-Davila*, 660 F.Supp.2d 205 (D.P.R. 2009)).  When taking judicial notice of documents, "these documents may only be considered for the fact that they contain a statement therein but not to prove the truth of the statement."  *Savage v. Sutherland Global Services, Inc.*, 2021 WL 726788, at *2 (W.D.N.Y. Feb. 25, 2021) (quoting *Cunningham v. Cornell Univ.*, 2017 WL 4358769, at * 4 (S.D.N.Y. Sept. 29, 2017)); *see also Starbrands Capital, LLC v. Original MW, Inc.*, 2015 WL 13691435, at *4 (D. Mass. Aug. 14, 2015) ("It would be inappropriate, however, to take judicial notice of this material for the purpose of establishing the truth of its contents.") (internal citations omitted).

Class Period, the Plans' per participant administrative and recordkeeping fees were astronomical

for the Plans' size:

| 401(a) Plan | | | | | | |
|---|---|---|---|---|---|---|
| | Participants | RK Direct T Rowe Price 15 49 57 | RK Indirect | Credit | Total Comp | $PP |
| 2016 | 13009 | $118,401 | $741,121 | | $859,522 | $66 |
| 2018 | 12,984 | $1,609,324 | $120,603 | -$216,962 | $1,512,965 | $117 |
| 2019 | 14,192 | $1,609,324 | $112,363 | | $1,721,687 | $121 |
| 2020 | 15,817 | $611,951 | $127,690 | | $739,641 | $47 |

| 403(b) Plan | | | | | |
|---|---|---|---|---|---|
| | Participants | RK Direct | RK Indirect | Total Comp | $PP |
| 2016 | 12304 | $117,034 | $775,118 | $892,152 | $73 |
| 2018 | 13370 | $1,633,815 | $144,349 | $1,778,164 | $133 |
| 2019 | 14227 | $1,633,815 | $39,327 | $1,673,142 | $118 |
| 2020 | 15439 | $641,949 | $41,304 | $683,253 | $44 |

¶ 82.  A prudent fiduciary would have understood these fees to be excessive and taken corrective

action by seeking lower cost administrative and recordkeeping alternatives.  *Id.*  The Plans should

be treated as a single Plan for purposes of negotiating recordkeeping and fund fees.  ¶ 84.

Looking at recordkeeping costs for other plans of a similarly size in 2019 (plans having

over 30,000 participants and approximately $3 billion dollars in assets under management) shows

that the Plans were paying higher recordkeeping fees than their peers:

| Comparable Plans' R&A Fees Paid in 2019 | | | | | |
|---|---|---|---|---|---|
| Plan Name | Number of Participants | Assets Under Management | Total R&A Costs | R&A Costs on Per-Participant Basis | Record-keeper |
| Deseret 401(k) Plan | 34,938 | $4,264,113,298 | $773,763 | $22 | Great-West |
| The Dow Chemical Company | 37,868 | $10,913,979,302 | $932,742 | $25 | Fidelity |

7

| Comparable Plans' R&A Fees Paid in 2019 | | | | | |
|---|---|---|---|---|---|
| Plan Name | Number of Participants | Assets Under Management | Total R&A Costs | R&A Costs on Per-Participant Basis | Record-keeper |
| Employees' Savings Plan | | | | | |
| The Savings and Investment Plan [WPP Group] | 35,927 | $3,346,932,005 | $977,116 | **$27** | Vanguard |
| Danaher Corporation & Subsidiaries Savings Plan | 33,116 | $5,228,805,794 | $1,124,994 | **$34** | Fidelity |
| The Rite Aid 401(k) Plan | 31,330 | $2,668,142,111 | $930,019 | **$30** | Alight Financial |

¶ 90.   Some authorities cited in case law dating as far back as six years ago recognized that reasonable rates for jumbo plans typically average around $35 per participant, with costs coming down every day.   ¶ 91.   Here, the Plans' fiduciaries could have negotiated recordkeeping and administration fees in the range of $14 to $35 per participant.   ¶ 92.

### 3.  Several of the Funds in the Plans had Lower Cost Better Performing Alternatives in the Same Investment Style

The Plans also failed to replace several of the higher cost, underperforming actively managed funds with nearly identical lower cost alternatives.   ¶ 93.   In 2020, these four funds housed over $139 million dollars in participant assets. *Id.*  The funds' performance fell well short of acceptable industry standards, and they should have been replaced at the beginning of the Class Period or sooner.  ¶ 94.  Defendants' failure to replace the funds cost the Plans and their participants millions of dollars in lost opportunity and revenue.  *Id.*  Not only are the fees excessive as compared to the similar lower cost alternatives, but the suggested alternative funds outperformed all of the funds significantly in their 3- and 5- year returns.   ¶ 97.   Additionally, one of the Plans' funds, the

Templeton Global bond R6, performed worse than 95% of tis 256 peers at the one-year benchmark, 94% worse than 327 of its peers at the 3-year mark, and 89% worse than its 321 peers at the 5-year benchmark.  ¶ 99.  Prudent fiduciaries utilize the Modern Portfolio Theory (MPT) or a nearly identical methodology to assess a plan's investment choices and overall strategy.  ¶ 101.  Had the MPT or a nearly identical methodology been properly utilized, these funds would not have been selected.  ¶ 102.

## IV.   ARGUMENT

### A.  Plaintiffs Have Adequately Alleged Their Standing to Pursue Claims Related to the Imprudent Management of the Plans' Funds

Defendants argue because Plaintiffs do not expressly allege which of the challenged funds they were invested in, they lack Article III standing to challenge all the Plans' problematic funds. Defs. Mem. at 16-17.  This argument lacks merit.  This precise argument has been rejected before. *See Khan v. PTC, Inc.*, 2021 WL 1550929, at * 2 (D. Mass. April 20, 2021) ("The Beneficiaries respond [to defendants' Article III challenge] that because they alleged that 'they invested in Plan investments which are the subject of this lawsuit,' they have Article III standing to bring this action on behalf of the Plan…. This Court agrees with the Beneficiaries.") (emphasis added).  Defendants simply seek to elevate form over substance.   Here, Plaintiffs have substantively alleged their participation in the Plans at issue in this case and Defendants *do not* challenge the veracity of this pleading which in any case must be viewed in the light most favorable to Plaintiffs. *Sweda,* 923 F.3d at 325 (noting "we apply the same standard as the district court and construe the complaint 'in the light most favorable to the plaintiff.'") (citation omitted).

"An 'allegation of fiduciary mismanagement, which at this stage in the proceedings we assume to be true, identifies a concrete injury that is redressable by a court and falls within the scope of Article III standing.'" *Khan v. PTC, Inc.*, No. 20-cv-11710, 2021 WL 1550929, at *4 (D.

Mass. Apr. 20, 2021). When plaintiffs "allege plan-wide injuries, [] as participants in the plans, they may sue to course-correct the plans' management." *McGowan v. Barnabas Health, Inc*., No. 13-cv-119, 2021 WL 1399870, at *4 (D.N.J. Apr. 13, 2021).  There is no doubt Plaintiffs have alleged standing with respect to the recordkeeping claim.  Thus, Plaintiffs may establish individual standing by alleging they were harmed by Defendants' fiduciary breaches of causing payment of excessive recordkeeping fees.  This gives Plaintiffs standing to pursue the Plans' claims. *See Braden*, 588 F.3d at 593 (noting a suit under 29 U.S.C. §1132(a)(2) is "brought in a representative capacity on behalf of the plan as a whole," and remedies under §1109 "protect the entire plan.")

The defendants in *Garcia v. Alticor, Inc.* made a similar standing argument as Defendants make here.  The court rejected Defendants' argument reasoning, "Defendants' argument here is somewhat confusing because they do not dispute that Hart has standing to bring a claim based on excessive recordkeeping fees […] instead arguing that he cannot bring a claim based on selection of challenged funds." *Id.*  The court concluded "those are both arguments in Count I of Plaintiffs' complaint" and "[t]he [c]ourt declines to split Plaintiffs' causes of action at this stage." *Id.*  The court further reasoned:

> Given Defendants' concession that Hart may have been injured by excessive fees, the Court concludes that Hart has satisfied the requirements of Article III because he has alleged actual injury to his Plan accounts. This injury is fairly traceable to Defendants' conduct, a causal connection between Defendants' alleged conduct and Hart's losses exists, and Hart has demonstrated a likelihood that his injuries will be redressed by a favorable judgment. Thus, the Court will deny the portion of the motion to dismiss based on subject-matter jurisdiction.

*Id.* at *5-6.

**B.  Defendants Breached Their Duty of Prudence By Implementing a Flawed Process for Selecting the Plans' Investment Options**

10

1.  **The Fee Benchmarks and Performance Comparisons for the Plans'
    Funds are Plausibly Alleged**

As a threshold matter, the Complaint compares four of the Plans' imprudent investment

options with other nearly identical investments available on the market to the same benchmarks as

a way to demonstrate the overall lack of prudent investment management displayed by the Plans'

fiduciaries. "In *Braden*, a combination of a 'market index and other shares of the *same* fund' met

this requirement [for a benchmark], but there is no one-size-fits-all approach." *Davis*, 960 F.3d at

484. The facts in *Meiners* are inapposite to those here. In *Meiners*, the investment management

claim was the sole claim, whereas here it is a complementary claim. Moreover, the district court's

observations in that case are supportive of Plaintiffs' claims here. The district court in *Meiners v.*

*Wells Fargo & Co.*, 2017 WL 2303968 (D. Minn. May 25, 2017) recognized the variety of

benchmarks that could be satisfactory:

> Meiners must plead something more to make his excessive fees
> claim plausible. *See Wildman v. Am. Century Servs., LLC*, No. 4:16–
> 737, 2017 WL 839795, at *4 (W.D. Mo. Feb. 27, 2017) (alleging
> that fees were excessive as compared to the average cost of similar
> sized plans); *Krueger*, 2012 WL 5873825, at *3 (alleging that fees
> were higher than the median fees for comparable funds as reported
> by two investment agencies).

*Id.* at * 3. Plaintiffs have pled these same benchmarks identified by the district court (*e.g.*

comparison to average and median costs of similar-sized plans).[9]

--------

[9] Defendants also cite to the non-binding opinion of *Kurtz v. The Vail Corp.*, 2021 WL 50878, at
*7-8 (D. Colo. Jan. 6, 2017), where the court determined it "cannot infer from plaintiff's
allegations that defendant imprudently managed the Plan" as the "[p]laintiff points to fifteen funds
that she alleges are more expensive than possible alternatives, but there are an additional twelve
she takes no issue with at all." *Id.* at 7-8. The court effectively required the plaintiffs to "claim
that *all* of the funds offered were too expensive or poorly-performing." *Id.* at 8 (emphasis in
original). This imposes a near impossible pleading standard on plaintiffs while shielding
fiduciaries from liability for failing to manage a plan's investments unless "*all* of the funds offered
were too expensive or poorly-performing." The court's conclusion is out of bounds with its own
reasoning that "[a] Plan fiduciary is tasked with a 'whole-portfolio, investment strategy that

### i.        The ICI is a Useful Measurement

Defendants question the usefulness of the Complaint's utilization of median and average fee comparisons.  Defs. Mem. at 18-20.  Their argument is meritless.  The median and average cost comparisons charts highlight a glaring failure in the Plans' fiduciaries' investment selection and monitoring process.  The fact that some of the Plans' funds had expense ratios that exceeded comparable funds by as much as 150% in some instances, ¶ 65, plausibly demonstrates imprudent conduct.  Using the ICI chart is appropriate because it uses an objective benchmark for measuring fee expenses: plan size.[10]  Had the Plans' fiduciaries faithfully executed their fiduciary duties, the expectation would be the expense ratios for the majority of the Plan's funds would be at or below the median and average prices similarly situated plans paid.  Instead, the opposite was true.  And the fact that the ICI uses composite fee data, Defs. Mem. at 19, is insufficient to account for the significant discrepancy between the Plan's fund fees and the median and average fund fees.

The Eighth Circuit has said there is "no one-size-fits-all approach" when it comes to picking benchmarks.  *Davis*, 960 F.3d at 484.  Notwithstanding Defendants' criticism of the use of the ICI median and averages charts, several courts have upheld claims based in part on the chart.  *See Silva v. Evonik Corp.,* 2020 U.S. Dist. LEXIS 250206, at *13 (D.N.J. Dec. 30, 2020) ("Plaintiffs allege that most of the investment options in the Plan charged higher-than-average fees, with reference to median fees published by the Investment Company Institute and the fees of

_____

properly balances risk and reward, as well as short-term and long-term performance."  *Kurtz*, 2021 WL 50878, at 8 (quoting *Birse v. CenturyLink, Inc.*, 2019 WL 1292861, at *3 (D. Colo. Mar. 20, 2019)).

[10] Unlike in *Davis v. Washington Univ. in St. Louis*, Plaintiffs here have not "simply ma[de] a bare allegation that costs are too high, or returns are too low."  *Davis*, 960 F.3d at 484.  Rather, Plaintiffs' here have alleged comparisons to the ICI Chart and performance benchmarks, which are just the "sound basis for comparison – a meaningful benchmark" the Eighth Circuit required for an investment-by-investment challenge in *Meiners*, 898 F.3d 820 at 822.

alleged comparators."); *Pinnell v. Teva Pharmaceuticals USA, Inc.*, 2020 WL 1531870 at * 5 (E.D. Pa. Mar. 31, 2020) ("[Plaintiffs] included three tables comparing investment options offered by the Plan to similar or identical lower-fee alternatives and comparing expense ratios to median fees in the same category); *Bouvy v. Analog Devices, Inc.*, 2020 WL 3448385, at * 2 (S.D. Cal. June 24, 2020) ("the Plan's investment expenses were higher than industry averages: at least 18 of the 20 mutual funds offered in 2016 had above-average expenses."); *see generally McCool v. AHS Mgmt. Company, Inc.*, 2021 WL 826756 (M.D. Tenn. Mar. 4, 2020) (upholding allegations based on ICI median charts); *Davis v. Magna Int'l. of Am., Inc.*, 2021 WL 1212579, at *7 (E.D. Mich. Mar. 31, 2021) (court rejected defendants challenges of the ICI study finding "[t]o the extent that Defendants argue the merits of Plaintiffs' comparisons, such arguments are premature in a motion to dismiss"). Moreover, Defendants are attempting to improperly inject their interpretation of the ICI median fee data which is improper at this stage of the litigation. *See* discussion *infra* regarding the fact-intensive nature of assessing appropriateness of comparators.

### ii. The Performance of the Plans' Funds Fell Well Short of Acceptable Industry Standards

Similarly, Defendants argue Plaintiffs failed to allege the Plan funds underperformed. Defs. Mem. at 20-22. Simply put, Defendants' argument (and case law they rely on) is based on their contention that Plaintiffs' alternatives were not, in fact, comparable. In *Nicolas*, the court remarked that "Defendant raises factual questions about whether the alternative funds Plaintiff suggests ... are apt comparisons—and, therefore, whether the underperformance Plaintiff depicts is an accurate portrait ... Such questions do not warrant dismissal—to the contrary, they suggest the need for further information from both parties." 2017 WL 4455897, at * 5; *Cryer v. Franklin Templeton Resources Inc.*, 2017 WL 818788, at *4 (N.D. Cal. Jan. 17, 2017) (same); *see also Main*

13

*v. Am. Airlines, Inc.*, 248 F.Supp.3d 786, 794 (N.D. Tex. 2017) (upholding similar allegations); *Pinnell*, 2020 WL 1531870, at * 1 (upholding similar allegations).[11]

Further, Defendants' suggestion that it is inappropriate to rely on one-, three, and five-year return data is misplaced. Defs. Mem. at 20. Fiduciaries are required to continually monitor a plan's funds for evidence of imprudence. *Tibble*, 135 S. Ct. at 1828-29.  It makes little sense to say, as Defendants do, that five years is an insufficient amount of time to evaluate the prudence of an investment.  Such a finding would undercut the Supreme Court's decision in *Tibble*.[12]

### iii. Under the Prevailing Circumstances Defendants Were Required to Investigate the Prudence of Offering Other Lower Cost, Better Performing Investment Options

Defendants misunderstand the Complaint's allegations regarding alternative funds.  Defs. Mem. at 20-22.  This is an alternative claim that complements Plaintiffs' primary allegations that Defendants engaged in an imprudent process.  The thrust of the allegations is that the Defendants failed to investigate whether the selected actively managed funds could be replaced with

---

[11] Defendants' reliance on *White v. Chevron Corp.*, 2017 WL 2352137 (N.D. Cal. May 31, 2017), is misplaced as the court's analysis there is incompatible with prevailing case law, including *Hughes*. Moreover, *White v. Chevron*, is distinguishable from the instant case because "unlike the plaintiff in *White*, [plaintiffs do] not challenge the overall investment lineup." *Lorenz v. Safeway*, 241 F. Supp. 3d 1005, 1023 (N.D. Cal. 2017). Plaintiffs only challenge a subset of the Plan's funds. Plaintiffs have clearly alleged more than just "[p]oor performance," in contrast to the allegations in *White.  See White*, 2017 WL 2352137, at *1.

[12] *See also Assembling a Robust Investment Policy Statement for Endowments and Foundations*, THE PNC FINANCIAL SERVICES GROUP, INC., Jan. 8, 2020 (a "fund's investment performance should be reviewed regularly, such as on an annual basis; however, the emphasis with regard to performance should be focused on results achieved over a full market cycle (typically a three-to-five year period)"), *available at* https://www.pnc.com/insights/corporate-institutional/manage-assets/assembling-a-robust-investment-policy-statement-for-endowments-foundations.html; *Cunningham v. Cornell Univ.*, 2019 WL 4735876, at *13 (S.D.N.Y. Sept. 27, 2019) (advisor satisfied fiduciary duty where it regularly presented "three and five-year benchmarks" of investment options); *New Orleans Employers Int'l Longshoremen's Ass'n, AFL-CIO Pension Fund v. Mercer Inv. Consultants*, 635 F. Supp. 2d 1351, 1361 (N.D. Ga. 2009) (similar).

comparable actively managed funds (Complaint, ¶¶ 93-103). *See Marshall v. Northrop Grumman Corp.*, 2019 WL 4058583 at * 10 (C.D. Cal. Aug. 14, 2019) ("[a] trier of fact could reasonably view the [investment committee's] evaluations and discussions in Investment Committee meetings insufficient to disprove a breach of Defendants' fiduciary duties because the Investment Committee failed to adequately weigh the costs and benefits of an active management strategy against a passive management strategy.").

### iv.     Whether Plaintiffs' Comparators are Meaningful Comparators for the Challenged Plan Funds is Not Suitable for Resolution at the Motion to Dismiss Stage

Defendants' arguments that Plaintiffs have not alleged apt comparators for the four of the Plan's challenged funds, Defs. Mem. at 18-22, fails for other reasons.  Plaintiffs adequately compare the funds' expense ratios to median and average fees of funds "in the same category" with the same "investment style."  ¶¶ 65-66.  Thus, Defendants really take issue with Plaintiffs' choice of comparators, but the argument raises issues of fact that require assessment on a more developed record. *See Evonik Corp.*, 2020 U.S. Dist. LEXIS 250206, at *13 (quoting *Nicolas v. Trustees of Princeton Univ.*, No. 17- 3695, 2017 WL 4455897, at *5 (D.N.J. Sept. 25, 2017)) (an inquiry into 'whether the alternative funds Plaintiff[s] suggest[ ] are apt comparisons' is a question of fact unsuitable for resolution on a motion to dismiss.); *Magna*, 2021 WL 1212579, at *6 (quoting *Braden*,588 F.3d at 598) ("[t]he Court finds *Braden* instructive in recognizing that '[n]o matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences.'"); *McCool*, 2021WL 826756, at *5 ("the appropriate inquiry on these claims involves issues of fact, which cannot be determined on a motion to dismiss"); *Cassell v. Vanderbilt Univ.*, 285 F.Supp.3d 1056, 1067 (M.D. Tenn. 2018) (same); *Cryer v. Franklin Templeton Resources Inc.*, 2017 WL 818788, at *4 (N.D.

Cal. Jan. 17, 2017) (same).  Similarly, in *Miller v. Autozone, Inc.*, 2020 WL 6479564, at *8-10

(W.D. Tenn. Sept. 18, 2020) defendants argued "[p]laintiffs' claim must fail because it is premised

on inappropriate comparison of actively managed funds to passively managed Vanguard index

funds."  2020 WL 6479564, at * 8.  AutoZone, like Defendants here argued "the actively managed

GoalMaker funds do not employ similar operations or investment strategies to passively managed

Vanguard funds."  *Id.*  The court rejected this argument.  *Id.*[13]

There are other differences between the allegations here and in *Davis* and *Meiners*.  In

*Davis*, plaintiffs compared actively managed funds to passively managed funds which the Eighth

Circuit found to be an "apples and oranges" comparison.  960 F.3d at 485.  Here of course,

Plaintiffs compare the Plans' funds to median and average fees of funds "in the same category"

with the same "investment style."  ¶¶ 65-66.

## C.  Defendants Breach Their Fiduciary Duties in Failing to Monitor the Plan's Recordkeeping Fees

As an initial matter, Defendants' argument that Plaintiffs allege nothing about the process

the Committee followed in monitoring recordkeeping fees is an argument that has been rejected

time and again.  Defs. Mem. at 8.  As noted above, courts recognize that direct evidence of an

imprudent process "tend[s] systematically to be in the sole possession of defendants," prior to

discovery.  *Braden*, 588 F.3d at 598.  Moreover, "[w]hile the absence of a deliberative process

may be enough to demonstrate imprudence, the presence of a deliberative process does not …

---

[13] Relying on precedent set forth by district courts across California, the court in *Wehner v. Genentech, Inc.*, rejected the plaintiffs' comparisons of actively and passively managed funds. *Wehner v. Genentech, Inc.*, 2021 WL 507599, at *10 (N.D. Cal. Feb. 9, 2021).  As addressed *supra*, most courts have held that the adequacy of plaintiffs' benchmarks raises issues of facts not suitable for resolution at the motion to dismiss. *White, et al. v. Chevron Corp.*, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016), which Defendants also rely, is an outlier that similarly relied on precedent outside the Second Circuit.

suffice in every case to demonstrate prudence. Deliberative processes can vary in quality or can be followed in bad faith. In assessing whether a fiduciary fulfilled her duty of prudence, we ask 'whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment,' not merely whether there were any methods whatsoever." *Sacerdote et al. v. New York Univ.*, 9 F.4th 95, 111 (2d Cir. 2021) (emphasis in original). Importantly, here prior to filing suit, Plaintiffs requested from Defendants the bare minimum for determining a prudent process, *i.e.* meeting minutes, and were rejected. ¶ 57. The recent *Coviello* decision sums up Defendants' meritless argument: "Defendants take issue with Plaintiffs' lack of factual specificity, and while that argument could ultimately prevail, it is inappropriate on a motion to dismiss, particularly where, as here, Plaintiffs allege they unsuccessfully sought from Defendants Plan-related documents under ERISA Section 104(b)(4) prior to filing suit." *Coviello*, No. 3:20-cv-30198, at ECF 77.

### 1. Defendants' Challenge to the Complaints' Plan Comparators Are Meritless

Defendants' challenge to Plaintiffs' choice of retirement plan comparators raises issues of fact that require assessment on a more developed record. *See* discussion *infra* at Section IV.B.1.iv. Defendants first complain that Plaintiffs' comparators are "cherry-picked." Defs. Mem. at 11. There are a few errors with this argument. First, although there are tens of thousands of plans in the market, only 90 in the country had the combined size of the Plans. *See supra* n. 6. Second, there is no difference between 401(k) plans and 401(a) or 403(b) plans with regard to fiduciary duties. There are no exceptions to ERISA's duty of prudence. All ERISA "fiduciaries are subject to the same duty of prudence." *Fifth Third Bancorp et al. v. Dudenhoeffer, et al.*, 573 U.S. 409, 412 (2014). Third, the fact that Plaintiffs' comparator plans utilized different recordkeepers than T.Rowe Price is of no moment, as Plaintiffs allege "[a]ll national recordkeepers have the capability

to provide all of the aforementioned recordkeeping services at very little cost to all large defined contribution plans." ¶ 74.  Lastly, because the price of recordkeeping is largely dependent on the number of participants (¶ 75), rather than underlying assets, the fact that the comparators identified in the Complaint have more assets than the Plans do not make them less comparable.

Next, Defendants argue the Complaint fails to plead any facts about services the comparator plans received. Defs. Mem. at 9.  Defendants' argument is a red herring because Plaintiffs have alleged that nearly all recordkeepers offer the same range of services.  ¶¶ 70-74; *see also Kendall v. Pharmaceutical Product Development, LLC*, 2021 WL 1231415, at *11 (assuming plaintiffs must allege fees were excessive related to the services rendered, "Plaintiffs also allege that all recordkeepers provide the same core group of services" to satisfy this requirement).

Regardless, this argument has been consistently rejected by other courts considering similar motions to dismiss because of the factually intensive nature of the scope of services.  *See, e.g. Magna*, 2021 WL 1212579, at * 10 ("With respect to Defendants' second argument, at this stage Plaintiffs need not allege why the fees were not justified by the services provided when considering the plan as a whole."); *Allison v. L Brands, Inc.*, 2021 WL 4224729, at *8 (S.D. Ohio Sept. 16, 2021) ("while this Court agrees with the Defendants that the reasonableness of the cost of the services provided is based on more than the bottom-line cost, Plaintiff does not rely merely on the bottom-line cost"); *Stark v. Keycorp*, 2021 WL 1758269, at *7 (N.D. Ohio May 4, 2021) (citing *Braden*, 588 F.3d at 596) (court rejected defendants' argument that "[p]laintiffs have failed to specifically identify the bundle of administrative services provided by Alight that might justify the higher costs" finding "plaintiffs are not required to rebut "all possible lawful explanations for a defendant's conduct."); *Kruger v. Novant Health, Inc.*, 131 F.Supp.3d 470, 479 (M.D.N.C.

2015) ("While Defendants claim that Plaintiffs have not alleged facts regarding … the services provided, or how the fees charged to the Plan were excessive in light of those services, this court finds that those are the types of facts warranting discovery, and, therefore, dismissal at this stage is not appropriate"); *Krueger v. Ameriprise Financial, Inc.*, 2012 WL 5873825, at *20 (D. Minn. Nov. 20, 2012) (same); *Karpik v. Huntington Bancshares, Inc.*, 2019 WL 7482134, at *7-8 (S.D. Ohio Sept. 26, 2019) (same); *Sweda*, 923 F.3d at 329 ("[m]any allegations concerning fiduciary conduct, such as reasonableness of 'compensation for services' are 'inherently factual question[s]' for which neither ERISA nor the Department of Labor give specific guidance.").

Moreover, it strains credulity to assume that Defendants obtained recordkeeping and administrative services for the Plan that was so far and above what its peers obtained that its off-the charts recordkeeping and administrative fees were justified.[14]   In the end, Defendants' challenge to Plaintiffs' choice of comparators raises issues of fact that require assessment on a more developed record.  *See McCool*, 2021WL 826756, at *5 ("the appropriate inquiry on these claims involves issues of fact, which cannot be determined on a motion to dismiss"). *See also Humana*, No. 3:21-cv-00232-RGJ (ECF No. 39), at *7-8 (finding plaintiffs' allegations that defendants paid significantly more for recordkeeping than comparable plans were "enough to survive a motion to dismiss"); *Cassell v. Vanderbilt*, 285 F.Supp.3d 1056, 1064 (M.D. Tenn. 2018) ("[t]he question whether it was imprudent to pay a particular amount of record-keeping fees generally involves questions of fact that cannot be resolved on a motion to dismiss.")

---

[14] *Young v. GM Inv. Mgmt. Grp*., 325 F. App'x 31, 33 (2d Cir. 2009) does not counsel otherwise. The court noted plaintiffs did not allege "specific services," but unlike here, plaintiffs in that action alleged "no facts concerning other factors relevant to determining whether a fee is excessive under the circumstances." *Id*. at 33.  To the extent *Wilcox v. Georgetown Univ.*, 2019 WL 132281 (D.D.C. Jan. 8, 2019) supports Defendants' position, it is an outlier.  Similarly, *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, 2019 WL 4466714, at *2 (S.D.N.Y. Sept. 18, 2019), should be considered an outlier, as the court rejected a host of imprudence claims that routinely survive Rule 12 motions.

This is yet another reason why discovery on these issues is needed instead of crediting Defendants' bald statements.[15]   Nonetheless, Plaintiffs' allegations regarding excessive recordkeeping fees are well-pled.  First, Plaintiffs use 2019 as an exemplar year because the allegation is that over the course of the Class Period, the Plan's recordkeeping fees were similarly over-priced.  *See ¶* 82 ("Looking at all the years during the Class Period, it's clear these unreasonably high recordkeeping costs continued throughout the Class Period.")  Second, because fiduciaries are under a continuing duty to monitor fees, *see Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828-29 (2015), even showing one year of over-payment plausibly shows a breach of fiduciary duty.  Third, Plaintiffs' paragraph 91 alleges that average per participant recording keeping fees for large plans like the Plan were as low as $35 per participant in 2016, which is far less than what the Plan is paying *today*.[16]

Lastly, the five plans that Plaintiffs cite in their Complaint are a representative slice of comparable plans that obtained favorable pricing on recordkeeping costs that a prudent fiduciary running the Plans should have been able to obtain.  Each of the comparator plans are above 30,000

---

[15] Defendants' rely on pre-*Hughes* Seventh Circuit authority, such as *Hecker v. Deere & Co.,* 556 F.3d 575 (7th Cir. 2009), which was decided long before the Supreme Court considered the Seventh Circuit's erroneous ruling in *Divane v. Northwestern Univ.*, 953 F.3d 980 (7th Cir. 2020). *See, e.g., Hughes v. Northwestern Univ.*, 142 S.Ct. 737 (2022) more fully addressed *supra* Section I.  The *Hughes* decision is in line with the Second, Third, and Eighth Circuits regarding allegations a plaintiff needs to plead in order to survive a motion to dismiss claims of excessive fees. Similarly, *Albert v. Oshkosh Corp., Smith v. CommonSpirit Health,* and *Forman v. TriHealth, Inc.* all relied on the now reversed *Divane v. Northwestern Univ.* decision in dismissing the plaintiffs' claims and are presently pending appeal.  *Albert v. Oshkosh Corp.*, 2021 WL 3932029 (E.D. Wis. Sept. 2, 2021), *appeal filed* (7th Cir. Oct. 1, 2021); *Smith v. CommonSpirit Health*, 2021 WL 4097052 (E.D. Ky. Sept. 8, 2021), *appeal filed*, No. 21-5964 (6th Cir. Oct. 14, 2021); *Forman v. TriHealth, Inc.*, 2021 WL 4346764 (S.D. Ohio Sept. 24, 2021), *appeal filed*, No. 21-3977 (6th Cir. Oct. 25, 2021).

[16]  Defendants' citation to the Dow Chemical plan's recordkeeping fees does nothing to undermine the allegation in the Complaint (¶ 91) that average recordkeeping fees for a Plan the size of the Plan was $35 per participant as early as 2016.

participants meaning they are large plans like the combined Plans. Accordingly, comparing these plans to the Plans is not "deficient" as Defendants argue. Defs. Mem. at 9.[17] The same reasoning applies to the asset size of the comparator plans. Any plan over a billion dollars is a jumbo plan, so again, comparing the comparators to the Plan is appropriate. Defendants may quibble all they want, but at bottom all the comparator plans are within the range of size of the Plan yet paid markedly lower recordkeeping costs.[18]

### 2.  The Complaints' Allegations regarding Fee Estimates Are Well-Pled

Defendants complain Plaintiffs do not explain how they derived their per participant administrative and indirect recordkeeping fees. Defs. Mem. at 11. This is pretty basic math and is explained in the Complaint: "Recordkeeping expenses can either be paid directly from plan assets, or indirectly by the plan's investments in a practice known as revenue sharing (or a combination of both or by a plan sponsor)." ¶ 76. That means the indirect recordkeeping fees alleged in the Complaint were derived by adding up the revenue sharing paid to the recordkeeper from funds in the Plans. The funds in the Plans do not appear in Schedule C of the Form 5500 but are listed in attachments to the Form 5500. Elsewhere in the Complaint, Plaintiffs explain the Plans paid for recordkeeping through both direct and indirect means. ¶ 79; *see also* Complaint, n.

---

[17] *Martin v. CareerBuilder*, 2020 WL 3578022 (N.D. Ill. July 1, 2020), is inapposite because there the plan had less than $200 million in assets and so lacked the bargaining power of a plan the size of the Plan. The district court in *Meiners v. Wells Fargo & Co.*, 2017 WL 2303968 (D. Minn, May 25, 2017) stated "[c]entral to Meiners's complaint [wa]s the allegation that the Wells Fargo funds consistently underperformed Vanguard funds." *Id*. at *2. In other words, the plaintiffs' primary claim centered on a comparison between arguably different funds.

[18] Defendants draw the Court's attention to *Barchock v. CVS Health Corp.,* 886 F.3d 43 (1st Cir. 2018), a case that involved allegations having nothing at all to do with a claim for excessive recordkeeping and administrative fees. As the First Circuit noted "none of the cases on which the plaintiffs rely passed **on the question presented here**: whether allegations that a stable value fund invested a relatively high proportion of its assets in cash or cash-equivalents, and that such a 'cash' allocation departed radically from the logic and practices of such funds, suffice in combination to state a claim of imprudence under ERISA." *Id.* at 50 (emphasis added).

21

9 and 10 (indicating recordkeeping costs are derived from Form 5500s). Accordingly, Plaintiffs have adequately given notice to Defendants as to how the fees were calculated. *See Rosenkranz v. Altru Health Sys.*, 2021 WL 5868960, at *7 (D.N.D. Dec. 10, 2021) (applying Fed. R. Civ. P. 8(a)(2)'s requirement that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to analogous ERISA breach of fiduciary duty case) *Williams v. Centerra Group, LLC*, 2021 WL 4227384, at *2 (D.S.C. Sept. 16, 2021) (same); *Stark v. Keycorp*, 2021 WL 1758269, at *4 (N.D. Ohio May 4, 2021) (same); *Peterson v. Ins. Servs. Office, Inc.*, 2021 WL 1382168, at *2 (D.N.J. April 13, 2021) (same). No more pleading is required to put Defendants on notice as to the claims against them. Whether Defendants dispute fees and costs as taken from the Form 5500s only stresses the fact there are disputes of fact in this action that cannot be resolved at this stage.[19] *Sweda*, 923 F.3d at 329.[20]

Defendants also make the bald statement that Plaintiffs do not include indirect fees reported by the comparator plans. Defs. Mem. at 12-13. This is inaccurate. The comparator plans identified in the Complaint used investment funds that had either no revenue share associated with them or very little. Accordingly, any revenue share would be almost non-existent. It is not surprising then that Defendants make their statement without backing it up with actual numbers. That is because they cannot. Accordingly, Plaintiffs' comparisons are apples-to-apples.

---

[19] To the extent that Plaintiffs made any errors of fact regarding the recordkeeping fee amounts as Defendants argue, it was due to Plaintiffs' lack of access to accurate Plan data from the Plan's publicly filed form 5500s at the time of filing their Complaint and does not warrant dismissal. *See Pinnell,* 2020 WL 1531870, at * 6 ("The participants also alleged excessive recordkeeping fees, a plausible allegation despite the participants' initial miscalculation based on lack of information.")

[20] *Cunningham v. USI Insurance Services, LLC.*, 2022 WL 889164 (S.D.N.Y. Mar. 25, 2022) is inapposite. In *Cunningham*, the recordkeeper offered services beyond just recordkeeping. According to the court, "[m]ost notably, none of these ten purportedly 'comparable' plans offer participants the pension consulting or valuation services USICG offers to the Plan participants." 2022 WL 889164, at *4. Defendants do not argue the recordkeeper in this case offered such additional services for the Plans.

Lastly, the argument that the Plans received different mixes of services based on service codes is another red-herring.  Defs.  Mem. at 13.  All the codes broadly involving recordkeeping and administration which Plaintiffs have alleged can be provided at lower costs than the Plans obtained. Further, as explained above, courts find these issues best resolved beyond the pleadings stage.

### 3.  Facts Regarding The Fidelity Plan Are Relevant Under the Circumstances

The recent *Moitoso* lawsuit discussed in the Complaint, where Fidelity's multi-billion dollar plan with tens of thousands of participants was sued is highly informative.  The "parties [] stipulated that if Fidelity were a third party negotiating this fee structure at arms-length, the value of services would range from \$14-\$21 per person per year over the class period, and that the recordkeeping services provided by Fidelity to this Plan are not more valuable than those received by other plans of over \$1,000,000,000 in assets where Fidelity is the recordkeeper." *Moitoso et al. v. FMR, et al.*, 451 F.Supp.3d 189, 214 (D.Mass. 2020); *see also ¶¶* 87-88.

Fidelity's stipulation is quite informative because it doesn't matter whether the Plans' recordkeeper was Fidelity (it was T. Rowe Price) because for all intents and purposes Fidelity and T. Rowe Price are capable of providing the same scope of recordkeeping services.  *See* ¶ 74 ("All national recordkeepers have the capability to provide all of the aforementioned recordkeeping services at very little cost to all large defined contribution plans, including those much smaller than the Plans.").[21]  Defendants' argument that Fidelity's stipulation in *Moitoso* is unrelated to this

---

[21] Unlike the plaintiffs in *Mator v. Wesco Distribution, Inc.*, 2021 WL 452349, at *7 (W.D. Pa. Oct. 4, 2021) and *Perkins v. United Surgical Partners Int'l, Inc.*, 2022 WL 824839, at *6 (N.D. Tex. March 18, 2022) whom alleged "no facts about the level of services provided to the Plan's participants in exchange for the fees paid" or "the complete nature and scope of services provided by the alleged comparator plans" (*Mator*, 2021 WL 452349, at *7), Plaintiffs here provide a near exhaustive list of  the range of services recordkeepers provide as well as compare the Plan's per participant fees to the per participant fees paid by comparably sized plans.  ¶¶ 69-92.

case is unavailing.  Defs. Mem. at 14-15.  Of course, the stipulation is relevant because it adds to the plausible allegations that these Plans, which also hired a national provider like Fidelity as a recordkeeper, were paying more for recordkeeping than Fidelity thought they should be paying. If nothing else, these are issues that deserve further exploration in discovery.

### 4.   Defendants Failed to Adequately Stay Informed About Overall Trends in the Market Place Regarding Recordkeeping Fees

It was critically important for the Plans' fiduciaries to both conduct RFPs in this case and leverage the Plans' asset size and total number of participants to bargain for reasonable per participant recordkeeping and administrative costs beginning at the start of the Class Period. ¶ 92. Specifically, this would have allowed the Plans' participants to determine whether they were obtaining the best rates from T. Rowe Price.  *Bell v. Pension Comm. of ATH Holding Company, LLC*, 2017 WL 1091248 at * 5 (S.D. Ind. March 23, 2017) (finding "that Plaintiffs were not required to allege that the recordkeeping fees were the result of any type of self-dealing, but were required to assert only that Defendants failed to act with prudence under § 1104 when failing to solicit bids and to monitor and control recordkeeping fees."); *Short v. Brown U.*, 320 F.Supp.3d 363, 370 (D.R.I. July 11, 2018) ("Plaintiffs' claim that a prudent fiduciary in like circumstances would have solicited competitive bids plausibly alleges a breach of the duty of prudence."); *Ramos v. Banner Health*, 2017 WL 4337598, at * 3 (D. Colo. Sept. 29, 2017) (upholding claims defendant "failed to engage in a competitive bidding process in retaining Fidelity as the Plan's recordkeeper."); *George v. Kraft Foods Glob., Inc*., 641 F.3d 786, 799-800 (7th Cir. 2011) (finding plausible plaintiffs' argument that "defendants' failure to solicit bids caused them to overpay Hewitt by at least $16 per participant per year.").

### 5.   The Plans' Recordkeeping Fees Were Excessive Based on Market Comparisons

Plaintiffs cite to the recordkeeping costs for five comparably sized plans (plans having more than 30,000 participants and approximately $3 billion dollars in assets under management), which demonstrates that as of 2019, the Plan was paying higher recordkeeping fees than its peers. ¶ 90.  These allegations add up to a plausible claim for fiduciary failures.  *See, e.g., Smith et al. v. VCA, Inc., et al.,* No. 21-9140-GW-AGRx, at *6 (C.D. Cal. Apr. 6, 2022) (attached to Gyandoh Decl. as Ex. 4) (denying motion to dismiss recordkeeping fee claim when, "In defense of their position that such a fee is unreasonable, Plaintiffs provide a table of 'per participant retirement plan service fees' for other comparable plans with similar numbers of participants. *Id.* ¶ 129. The table at Plaintiffs' Complaint ¶ 129 indicates that Plaintiffs alleged comparable plans have recordkeeping services fees between $28 to $49.").

### D.  The Complaint Alleges Sufficient Facts to State A Claim for Failure to Monitor

Like the defendants in *Karg v. Transamerica Corp*., Defendants argue Plaintiffs' failure to monitor claim fails because the underlying imprudent management claim fails.  Defs. Mem. at 19-20.  This is of no moment, because Plaintiffs "have pleaded the underlying fiduciary breach necessary to support their failure to monitor claim."  *Karg*, 2019 WL 3938471, at * 9.

## V.    CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss in its entirety or, alternatively, grant Plaintiffs' an opportunity to amend the Complaint.

Dated: June 14, 2022

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire
Gabrielle Kelerchian, Esquire
(*Admitted Pro Hac Vice*)
PA Attorney ID # 88587
PA Attorney ID # 324248

**CAPOZZI ADLER, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
markg@capozziadler.com
Telephone: (610) 890-0200
Fax: (717) 233-4103

Donald R. Reavey, Esquire
(*Admitted Pro Hac Vice*)
PA Attorney ID #82498
2933 North Front Street
Harrisburg, PA 17110
donr@capozziadler.com
Telephone:  (717) 233-4101
Fax: (717) 233-4103

**GAWRYL & MACALLISTER**

/s/*Janine Gawryl*
Janine Gawryl, Esquire
NH Bar I.D. 911
41 E. Pearl Street
Nashua, NH  03060
Telephone:  (603) 882-3252
Fax: (603) 882-1572
jgawryl@gmac-law.com

Counsel for Plaintiffs and the Putative Class