**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

DEBRA M. ADAMS, DANILLIE L. MARS, MICHELLE L. MILLER and ANITA W. DAME, individually on behalf of all others similarly situated,

Plaintiffs,

v.

DARTMOUTH-HITCHCOCK CLINIC, THE BOARD OF TRUSTEES OF DARTMOUTH-HITCHCOCK CLINIC, THE ADMINISTRATIVE INVESTMENT OVERSIGHT COMMITTEE OF DARTMOUTH-HITCHCOCK CLINIC and JOHN DOES 1-30.

Defendants.

Civil Case No. 1:22-cv-00099-LM

**REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ... 1
I. The Opposition Confirms That Plaintiffs' Administrative Expense Claim Fails ... 2
A. Plaintiffs Do Not Show That Their Comparators Are Sufficiently Similar ... 3
B. Plaintiffs Offer No Defense Of Their "Fee Estimates." ... 4
II. The Opposition Confirms That Plaintiffs Do Not State An Investment Claim ... 6
A. Plaintiffs Fail To Allege Facts To Establish Standing ... 7
B. Plaintiffs Fail To Plead A Valid Benchmark For Investment Expenses ... 7
C. Plaintiffs Fail To Plead A Valid Benchmark For Investment Performance ... 9
III. The Opposition Confirms That Plaintiffs Do Not State A Monitoring Claim ... 10
CONCLUSION ... 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Barchock v. CVS Health Corp.*,
886 F.3d 43 (1st Cir. 2018) ........ 1, 2, 9

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ........ 10

*Cunningham v. USI Services, LLC*,
2022 WL 889164 (S.D.N.Y. Mar. 25, 2022) ........ 5, 6

*Davis v. Washington Univ. in St. Louis*,
960 F.3d 478 (8th Cir. 2020) ........ 7, 8, 9

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ........ 1, 3, 4

*George v. Kraft Foods Glob., Inc.*,
641 F.3d 786 (7th Cir. 2011) ........ 6

*Hughes v. Northwestern University*,
142 S. Ct. 737 (2022) ........ 3, 4

*Mator v. Wesco Distribution, Inc.*,
2021 WL 4523491 (W.D. Pa. Oct. 4, 2021) ........ 3

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018) ........ *passim*

*Perkins v. United Surgical Partners Int'l Inc.*,
2022 WL 824839 (N.D. Tex. Mar. 18, 2022) ........ 8

*Peterson v. E. Boston Sav. Bank*,
2018 WL 4696746 (D. Mass. Sept. 29, 2018) ........ 9

*Smith v. CommonSpirit Health*,
No. 21-5964 (6th Cir. June 21, 2022), slip op. ........ 1, 4, 8, 10

*Stark v. Keycorp*,
2021 WL 1758269 (N.D. Ohio May 4, 2021) ........ 9

*Thole v. U.S. Bank, N.A.*,
140 S. Ct. 1615 (2020) ........ 7

*Tibble v. Edison International*,
575 U.S. 523 (2015)....................10

*Tobias v. NVIDIA Corp.*,
2021 WL 4148706 (N.D. Cal. Sept. 13, 2021)....................4

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021)....................7

*Velazquez v. Mass. Fin. Servs. Co.*,
320 F. Supp. 3d 252 (D. Mass. 2018)....................2

**Statutes**

29 U.S.C. § 1132(a)(2)....................7

**Other Authorities**

Daniel Aronowitz, *Debunking Recordkeeping Fee Theories in "Excessive" Fee Cases* at 14-15, EUCLID FIDUCIARY (Apr. 2022)....................4

## INTRODUCTION

As the opening brief demonstrates, the complaint in this case lacks any meaningful benchmarks against which to judge the Plans' purported expenses. Ignoring documents showing administrative expenses of $42 per participant per Plan for most of the class period, Plaintiffs allege that the Plan's administrative fees were supposedly higher than a few other large plans, and that some of the Plan's investment options were more expensive than the average investments in broad, over-inclusive categories. But Plaintiffs do not plead any facts that suggest the decision to use (allegedly) more expensive services and options reflects a flawed decision-making process.

Plaintiffs' Opposition does not engage with these failings. Instead, it asserts that the complaint raises "factually complex" issues that cannot be resolved on a motion to dismiss. Dkt. 24 ("Opp.") at 3-4. This response is manifestly insufficient in light of the requirement to give "careful, context-sensitive scrutiny" to a complaint's allegations. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014); *Barchock v. CVS Health Corp.*, 886 F.3d 43, 44 (1st Cir. 2018). Indeed, just today, the Sixth Circuit unanimously affirmed the dismissal of materially similar claims by this same Plaintiffs' counsel against a healthcare provider, emphasizing that ERISA "does not give the federal courts a broad license to second-guess the investment decisions of retirement plans." Ex. 18, *Smith v. CommonSpirit Health*, No. 21-5964 (6th Cir. June 21, 2022), slip op. at 2.

Plaintiffs relegate *Barchock* to a footnote, asserting that it did not address a claim for recordkeeping and administrative fees. Opp. 21 n.18. But that distinction falls flat for two reasons. First—as in the recent decision in *Smith*—the *Barchock* court looked closely at the details of the investment, the studies cited in the complaint, and other contextual matters in order to decide whether the breach of fiduciary duty alleged in that case was plausible. Plaintiffs offer no reason why such scrutiny is appropriate when plaintiffs challenge one type of investment fund, but inappropriate when plaintiffs challenge other types of investment funds or services. Second, the First

Circuit *did* address excessive-fee cases in *Barchock*. It explained that "allegations of self-dealing" were the crucial factor in the cases that had allowed such claims to proceed to discovery. 886 F.3d at 50 & n.6; *see also Velazquez v. Mass. Fin. Servs. Co.*, 320 F. Supp. 3d 252, 258-60 (D. Mass. 2018) (same) (cited at Opp. 3 n.5). Self-dealing allegations are not part of this case.

In another telling understatement, Plaintiffs admit that the complaint may contain "errors" due to "lack of access to accurate Plan data," Opp. 22 n.19, and request "latitude" because they supposedly did not receive Plan-related documents prior to filing suit, Opp. 4. This is disingenuous. Dartmouth-Hitchcock provided multiple documents in response to Plaintiffs' inquiries and told Plaintiffs' counsel that additional documents were available from T. Rowe Price. *See* Ex. 19, May 27, 2021 Ltr. to M. Gyandoh. More troubling, Plaintiffs continue to ignore these documents, many of which Dartmouth-Hitchcock attached to the motion to dismiss. At the same time, Plaintiffs do not dispute that the Court can take judicial notice of these documents. Nor can they. The majority are documents Plaintiffs *themselves* rely on in their complaint.

In short, armed with ample information, much of which contradicts the generic allegations in their complaint, Plaintiffs cannot "dodge the requirement for a meaningful benchmark by merely finding a less expensive alternative fund" or service and declaring that any differences between the funds or services present questions of fact. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018). Plaintiffs cite nonbinding and poorly reasoned decisions that have refused to apply the scrutiny that *Barchock* and *Duddenhoeffer* demand. But this Court should "decline to follow the district court opinions that concluded otherwise." *Id.* at 824.

## I. The Opposition Confirms That Plaintiffs' Administrative Expense Claim Fails.

Plaintiffs concede that fiduciaries are not required to focus only on cost, and may prudently decide to pay higher expenses for additional services or quality. *See* Dkt. 22 ("Mem.") 4-6. Especially because cost is only one factor in decision-making, it is critical that a complaint that rests

entirely on circumstantial cost allegations plead facts showing that its cost comparisons are truly apples-to-apples. As Plaintiffs' Opposition confirms, their complaint fails this standard.

**A. Plaintiffs Do Not Show That Their Comparators Are Sufficiently Similar.**

The first reason Plaintiffs do not show an apples-to-apples comparison is that they allege nothing about the administrative services received by the Plans and the comparator plans—necessary context to decide whether the fees paid are reasonable. Mem. 9-11. Plaintiffs respond that they do not need to plead facts about what services the Plans or the comparator plans received because "nearly all recordkeepers offer the same range of services." Opp. 18. But it does not matter what administrative services a recordkeeper offers; it matters what services a plan and its participants actually *purchase*. That is the relevant benchmark. Plaintiffs also do not dispute that that the Plans have fewer assets, use a different recordkeeper, and have fewer participants than the comparator plans (because Plaintiffs are double-counting participants in both the 401(a) and 403(b) Plan). Mem. 3, 9. All of these differences make it even more implausible that one can draw inferences about a prudent process from Plaintiffs' bare expense allegations.[1]

Plaintiffs dismiss the weight of contrary authority as "outliers" supposedly abrogated by *Hughes v. Northwestern University*, 142 S. Ct. 737 (2022), and appear to suggest that ERISA excessive recordkeeping fee claims may no longer be decided on motions to dismiss. Opp. 2-5. That is untenable. *Hughes* solely vacated the lower court opinion for concluding that "participants'

[1] Plaintiffs cite a string of cases that conclude, with little analysis, that a plaintiff is not required to identify the services a plan receives to raise a plausible inference of imprudence. Opp. 18-19. But under the Supreme Court's command to apply "careful, context-sensitive scrutiny," *Dudenhoeffer*, 573 U.S. at 425, a plaintiff cannot merely allege different expenses without facts showing that the services the plans received were meaningfully similar. Plaintiffs also say that, unlike the plaintiffs in the cases cited in the opening brief, they have provided a "near exhaustive list" of the "range of services recordkeepers provide." Opp. 23 n.21. But those cases were not dismissed because the plaintiffs failed to allege what services recordkeepers can provide. They were dismissed because, as here, the Plaintiffs did not allege any facts "about the level of services *provided to the Plan's participants* in exchange for the fees paid." *Mator v. Wesco Distribution, Inc.*, 2021 WL 4523491, at *7 (W.D. Pa. Oct. 4, 2021) (emphasis added).

ultimate choice over their investments" could "excuse allegedly imprudent decisions." *Id*. at 742. Dartmouth-Hitchcock has not made that argument here. Indeed, far from suggesting that motions to dismiss are a dead letter, *Hughes* reiterated that "the appropriate inquiry" at the pleading stage "will necessarily be context specific." *Id*. (quoting *Dudenhoeffer*, 573 U.S. at 425). That is why plaintiffs must plead "that the services that [the defendant]'s fee covers are equivalent to those provided" by other plans to state a plausible claim. Ex. 18, *Smith* slip op. at 12.

**B. Plaintiffs Offer No Defense Of Their "Fee Estimates."**

As Plaintiffs do not dispute, the Plans' annual fee disclosures and participant statements have long reflected an administrative fee of $42 per participant per plan. Mem. 4, 11. This amount falls well within the reasonable range of plan recordkeeping fees. As one independent third-party database indicates, plans with 15,000+ participants typically pay between $42 and $53 in a 2021 survey. *See* Daniel Aronowitz, *Debunking Recordkeeping Fee Theories in "Excessive" Fee Cases* at 14-15, EUCLID FIDUCIARY (Apr. 2022), available at https://www.euclidspecialty.com/wp-content/uploads/2022/04/Euclid-Fiduciary-Whitepaper-Debunking-Recordkeeping-Fee-Theories-April-2022-Rev-Ed.pdf. Indeed, the rate is substantially lower than the $53-$63 per participant rate this Plaintiffs' counsel alleged in an unsuccessful recordkeeping claim in *Tobias v. NVIDIA Corp.*, 2021 WL 4148706, at *14-15 (N.D. Cal. Sept. 13, 2021). All of this is directly relevant context a court should consider in assessing the plausibility of Plaintiffs' claim.

Despite the clear disclosures in their possession, Plaintiffs assert that "pretty basic math" shows that administrative expenses were as high as $133 per participant during the relevant period. Opp. 21-22. Their math is unsound. *See* Mem. 11-12. The "RK Direct" fees Plaintiffs cite for the Plan include three different types of services: recordkeeping fees (code 15), other services (code 49), and redemption fees (code 57). To these aggregate fees, Plaintiffs add "indirect" figures, which they claim reflect what are known as "revenue sharing" payments–investment management

fees that are in turn shared with the Plan recordkeeper. But the Form 5500 Plaintiffs cite does not reflect revenue-sharing amounts, and Plaintiffs do not explain where these figures come from.[2]

Plaintiffs also fail to show why they can include (unexplained) indirect fees for the Plans but ignore indirect fees for the comparator plans. Mem. 12-13; *see also* Opp. 7 (offering a chart of supposed direct, indirect, and total compensation for the Plans' but no similar chart for the comparators). Plaintiffs attempt to justify this inconsistency by stating that the comparator plans "used investment funds that had either no revenue share associated with them or very little." Opp. 22. But again, Plaintiffs allege no plausible basis for this conclusion. Revenue sharing amounts and other indirect compensation are not disclosed on the comparator plan's Form 5500s.

Plaintiffs do not deny that their comparisons lump together a variety of different service codes, none of which match the codes reported by the Plans, or that they are merely guessing at what the Form 5500s reflect. Mem. 13. Plaintiffs merely respond that the codes all "broadly involve[e] recordkeeping and administration." Opp. 23. This proves the point. Plaintiffs themselves list a host of different types of recordkeeping services (some flat fee, some "a la carte"). Compl. ¶¶ 71-74. Plaintiffs cannot rely on broad generalizations but must allege "how the sum of those fees is excessive in relation to the specific services" provided by "pleading other plans with 'similar service disclosures on their Form 5500s.'" *Cunningham v. USI Services, LLC*, 2022 WL 889164, at *5 (S.D.N.Y. Mar. 25, 2022).

Plaintiffs attempt to distinguish *Cunningham* on the grounds that the recordkeeper in that

[2] Plaintiffs merely note that the funds in the Plan "are listed in the attachments to the Form 5500." Opp. 21. This presumably refers to the Independent Auditor's Report, but that does not indicate revenue sharing amounts either. *See, e.g.*, Dkt. 22-11 at ECF Page 36. The only reference to "revenue sharing" in the Form 5500 is the statement that *the Plan* receives revenue sharing from T. Rowe Price, which is used to pay for a variety of plan-related expenses, including recordkeeping fees, auditing and accounting fees, and an investment advice fee. Dkt. 22-11 at ECF Page 31. This does not explain where Plaintiffs got their indirect fee numbers, and regardless shows that revenue sharing was used to pay for many services other than recordkeeping. *See* Mem. 12 n.11.

case offered pension consulting services to the plan. Opp. 22 n.20. But that portion of the opinion addressed a *separate* problem with the complaint's allegations. As the court later stated, "most significantly, Plaintiff's allegations also crucially fail because there is no 'indication of how [she] calculated the per-participant fees for recordkeeping and administrative costs'" for the plans in the complaint. 2022 WL 889164, at *5. That is exactly the case here.[3]

Finally, it is irrelevant that a different recordkeeper (Fidelity) supposedly valued the administrative services provided to its own plan at $14 to $21, as Plaintiffs claim. Plaintiffs assert that Fidelity had the capacity to provide many of the same administrative services as T. Rowe Price and thus Fidelity's stipulation shows that the Plans "were paying more for recordkeeping than Fidelity thought they should be paying." Opp. 23-24. But Fidelity was not the Plans' recordkeeper, so the stipulation Plaintiffs cite says nothing about what Fidelity "thought" the Plans should be paying. The stipulation does not even imply that Fidelity was providing the same services that the Plans received from T. Rowe Price. Notably, Plaintiffs do not acknowledge, let alone distinguish, the recent decisions that squarely reject this very stipulation as a basis for a prudence claim. Mem. 14-15. Nor do Plaintiffs cite any courts that have relied on the stipulation in sustaining a claim.[4]

## II. The Opposition Confirms That Plaintiffs Do Not State An Investment Claim.

Plaintiffs' investment claim fares no better than the administrative expense claim. Plaintiffs both lack standing to bring this claim and fail to plausibly allege a claim on the merits.

---

[3] Plaintiffs cite other cases in which courts have allowed recordkeeping claims to proceed to discovery. *See* Opp. 22. But those decisions did not address the specific flaws with Plaintiffs' inferences identified here. Plaintiffs also err in framing the issue as one of adequate "notice." Opp. 22. The problem is that the cited documents do not plausibly support Plaintiffs' allegations.

[4] Without a plausible basis for alleging that the Plans' administrative expenses were excessive, pure speculation that the Committee did not conduct an RFP during the relevant period carries no weight. Mem. 15 & n.15. Plaintiffs cite three district court decisions that credited conclusory allegations about RFPs at the pleading stage, Opp. 24, but those decisions are out of step with the weight of authority cited in Dartmouth-Hitchcock's brief. Plaintiffs also cite *George v. Kraft Foods Glob., Inc.*, 641 F.3d 786 (7th Cir. 2011). But contrary to Plaintiffs' parenthetical, that decision arose at summary judgment, did not address plausibility, and did not rely on a mere failure to solicit bids.

**A. Plaintiffs Fail To Allege Facts To Establish Standing.**

Plaintiffs have not shown any concrete injury as a result of the Plan's investment options. As Plaintiffs do not dispute, a participant pays no additional expenses, and receives no benefits, when a defined contribution plan offers an investment option that the participant does not select. Yet Plaintiffs do not allege that they invested in any of the options that they now claim were imprudent—information Plaintiffs certainly do not need discovery to plead. Mem. 16-17.[5]

Plaintiffs note that some courts have found alleged injuries based on recordkeeping fees sufficient to create standing to bring claims based on investment options as well. Opp. 9-10. That is contrary to recent Supreme Court authority. As Plaintiffs themselves note, their "investment management claim" is a distinct and "complementary claim" to their recordkeeping claim. Opp. 11. It is black-letter law that "plaintiffs must demonstrate standing for each claim that they press." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). Moreover, Plaintiffs cannot rely on 29 U.S.C. § 1132(a)(2)'s statutory authorization to establish standing. As the Supreme Court has made clear, "the cause of action does not affect the Article III standing analysis" in ERISA cases. *Thole v. U.S. Bank, N.A.*, 140 S. Ct. 1615, 1620 (2020).

**B. Plaintiffs Fail To Plead A Valid Benchmark For Investment Expenses.**

Plaintiffs briefly (and inaccurately) claim that "most courts" have held that whether a cheaper investment is an appropriate benchmark must await discovery. Opp. 16 n.13. Ultimately, however, they concede that *Meiners* and *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478 (8th Cir. 2020), provide the applicable pleading standard. Opp. 5, 11. These cases squarely hold that ERISA plaintiffs must allege facts that plausibly establish a benchmark. Plaintiffs do not even

[5] Plaintiffs say that Defendants "do not challenge the veracity" of Plaintiffs' "participation in the Plans at issue in this case." Opp. 9. That is not the issue. The question is whether Plaintiffs elected to invest any portion of their individual accounts in the specific investments they claim it was imprudent to offer.

attempt to do so here. Instead, they appear to fundamentally misunderstand the standard.

Plaintiffs repeatedly assert that it is sufficient to compare investments to "average" costs of "similar-sized plans." Opp. 11; *see also* Opp. 12 (calling "plan size" an "objective benchmark"). To allege a plausible benchmark, Plaintiffs must allege that the *investments* are similar, not that the *plans* are similar. That is because "[t]he fact that one fund with a different investment strategy" costs less or ultimately performed better than another fund "does not establish anything" about whether the second fund was "an imprudent choice at the outset." *Meiners*, 898 F.3d at 823. Contrary to this standard, Plaintiffs allege no funds comparable to the Plans' investment options.

Instead, Plaintiffs' investment expense allegations rest entirely on the ICI Report's *aggregate* summary of expenses for myriad investments. These high-level statistics do not provide a sound basis for comparison. As Plaintiffs concede, each of the ICI Report's fund categories covers many different types of funds and thus are "***not intended for benchmarking the costs of specific plans to the broad averages presented here***." Mem. 19 (quoting Ex. 15, ICI Report, at 60). Further, it is remarkable that Plaintiffs assert that one of the "differences" between this case and *Davis* is that "in *Davis*, plaintiffs compared actively managed funds to passively managed funds." Opp. 16. It is precisely "because the ICI study does not distinguish between actively and passively managed accounts" that courts have held that the ICI Report "is an insufficient benchmark to plausibly allege imprudence." *Perkins v. United Surgical Partners Int'l Inc.*, 2022 WL 824839, at *6 (N.D. Tex. Mar. 18, 2022). As the Sixth Circuit explained, higher-than-average investment management fees are merely evidence that a plan "offers a number of actively managed funds, and an imprudence claim based on this fee alone fails." Ex. 18, *Smith* slip op. at 12-13.[6]

[6] Plaintiffs cite a handful of district court cases that have upheld claims based *in part* on the ICI Report. Opp. 12-13. But here, Plaintiffs offer nothing other than the ICI Report to show that investment expenses were high. Plaintiffs also assert that "interpretation of the ICI median fee data . . . is improper at this stage

### C. Plaintiffs Fail To Plead A Valid Benchmark For Investment Performance.

Plaintiffs' performance allegations are more flimsy still. Plaintiffs do not respond to Dartmouth-Hitchcock's primary argument that all of Plaintiffs' performance allegations are pled in hindsight. Mem. 20-21. This alone is sufficient to dismiss the underperformance claims. *See Peterson v. E. Boston Sav. Bank*, 2018 WL 4696746 at *2 (D. Mass. Sept. 29, 2018) ("[F]ailure to oppose this argument amounts to a waiver of any objection to it.").

Further, Plaintiffs have not shown that any of the Plan's investment options meaningfully underperformed. To the contrary, Plaintiffs have no answer to the fact that the two funds identified in the complaint apparently *beat* their benchmarks over a three- and five-year period. Mem. 22. That Plaintiffs purport to have found two other investments that performed better than the identified funds is irrelevant. Without pleading a valid benchmark, these types of comparisons "do[] not establish anything" about the prudence of the challenged funds. *Meiners*, 898 F.3d at 823.

As Dartmouth-Hitchcock showed, using basic, publicly available and judicially noticeable information, the challenged funds and their supposed "comparators" are apples and oranges. Mem. 21-22. Plaintiffs do not even try to show otherwise—they simply claim this Court has no power to consider the question on a motion to dismiss. Opp. 13-14. This argument has been repeatedly and persuasively rejected, as ERISA plaintiffs "typically have extensive information regarding the selected funds" and "must offer more than 'labels and conclusions'" about "comparable" funds before the complaint will state a claim. *Meiners*, 898 F.3d at 822, 824. Indeed, cases in Plaintiffs' own brief reject their position.[7] As the Sixth Circuit put it, "pointing to an alternative

---

of the litigation." Opp. 13. That is flatly contrary to *Barchock*'s detailed assessment of the sources cited in the plaintiff's complaint, 886 F.3d at 52-53, as well as *Meiners* and *Davis*.

[7] *See, e.g.*, *Stark v. Keycorp*, 2021 WL 1758269, at *11 (N.D. Ohio May 4, 2021) (dismissing an investment claim where the plaintiff did not "fully demonstrate[] that the funds all had the same investment strategy, which might account for the small difference in returns without any correlating breach of fiduciary duty.");

course of action" in the form of a supposedly better-performing fund is "not by itself sufficient" to state a claim. Ex. 18, *Smith* slip op. at 7-8.

Finally, Plaintiffs completely misread *Tibble v. Edison International*, 575 U.S. 523 (2015), which they claim shows that allegations of short-term underperformance are enough to state a plausible claim. *See* Opp. 14. In fact, *Tibble* held merely that fiduciaries have a continuing duty to monitor investments—a proposition no one in this case disputes. The Supreme Court made clear that it was expressing "no view" on the *scope* of this continuing duty, including under what circumstances a fiduciary is required to remove an underperforming fund. 575 U.S. at 530-31. Thus, as case law recognizes, one cannot infer a flawed fiduciary process because a small number of investments allegedly underperformed over such a short period. That is particularly true when—as here—the fiduciary makes changes to the plan's other investment options during the same timeframe, reflecting a healthy fiduciary process. *See* Mem. 22; *see also* Ex. 18, *Smith*, slip op. at 12 (removing investments prior to suit "simply shows" that a fiduciary has satisfied *Tibble*).

## III. The Opposition Confirms That Plaintiffs Do Not State A Monitoring Claim.

Dartmouth-Hitchcock advanced three separate arguments for dismissal of Plaintiffs' monitoring claim: (1) the claim is derivative, (2) Plaintiffs did not plead any facts about the monitoring process, and (3) naming the Board as a defendant is duplicative since Plaintiffs also named Dartmouth-Hitchcock itself. Mem. 23-24. Plaintiffs have no response to the second or third arguments, and as to the first, they merely argue that they have plausibly alleged an underlying breach. Opp. 25. For all these reasons, the Court should dismiss the monitoring claim.

## CONCLUSION

The Court should grant the motion to dismiss.

---

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 n.7 (8th Cir. 2009) ("a bare allegation that cheaper alternative investments exist in the marketplace" is insufficient); *see also Meiners*, 898 F.3d at 823.

Dated: June 21, 2022

Respectfully submitted,

DARTMOUTH-HITCHCOCK CLINIC,
THE BOARD OF TRUSTEES OF
DARTMOUTH-HITCHCOCK CLINIC, AND
THE ADMINISTRATIVE INVESTMENT
OVERSIGHT COMMITTEE OF DARTMOUTH-
HITCHCOCK CLINIC,

By their attorneys,

By: *_/s/Nancy G. Ross_*
Nancy G. Ross (admitted *pro hac vice*)
Jed W. Glickstein (admitted *pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
nross@mayerbrown.com
jglickstein@mayerbrown.com

E. Brantley Webb (admitted *pro hac vice*)
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
bwebb@mayerbrown.com

By: *_/s/ Daniel M. Deschenes_*
Daniel M. Deschenes, Esq. (NH #14889)
Kathleen M. Mahan, Esq. (NH #17124)
HINCKLEY, ALLEN & SNYDER, LLP
650 Elm Street
Manchester, NH 03101
(603) 225-4334
ddeschenes@hinckleyallen.com
kmahan@hinckleyallen.com

*********

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing(s) to all those registered with the ECF system.

*/s/ Daniel M. Deschenes*