## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| DEBRA M. ADAMS, DANILLIE L. MARS, and MICHELLE L. MILLER, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) | **CIVIL ACTION NO.: 22-CV-99-LM** |
| v. | ) | |
| DARTMOUTH-HITCHCOCK CLINIC, THE BOARD OF TRUSTEES OF DARTMOUTH-HITCHCOCK CLINIC, THE ADMINISTRATIVE INVESTMENT OVERSIGHT COMMITTEE OF DARTMOUTH-HITCHCOCK CLINIC and JOHN DOES 1-30. | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS FOR SETTLEMENT PURPOSES ONLY, APPROVAL OF FORM AND MANNER OF SETTLEMENT NOTICE, PRELIMINARY APPROVAL OF PLAN OF ALLOCATION, AND SCHEDULING A DATE FOR A FAIRNESS HEARING AND MEMORANDUM IN SUPPORT

Plaintiffs, Debra Adams, Danillie Mars, and Michelle Miller (collectively, "Plaintiffs"),

participants in the Dartmouth-Hitchcock Retirement Plan or "401(a) Plan" and the Dartmouth-

Hitchcock Employee Investment Plan or "403(b) Plan" (collectively, the "Plan")[1] respectfully

---

[1] For convenience in this Motion, Plaintiffs refer to the two retirement plans as a single "Plan," because: (1) Defendants have discussed the plans as being part of Dartmouth's "Retirement Program[;]" (among other Retirement Program benefits) (2) the plans have utilized the same recordkeeper and offered many (but not all) of the same investments; (3) Defendants, at times, have discussed the plans together when considering plan administration issues; and (4) many (but not all) employees participate in both plans. *See* ECF No. 62-1, Memorandum of Law In Support Of Plaintiffs' Motion For Class Certification (listing sources); *see also* ECF No. 1 (hereinafter, "Compl."), ¶ 84. For various reasons, including because any settlement payments would have to be issued to two separate sets of accounts for the two Dartmouth-Hitchcock retirement plans, Defendants do not agree that these two plans can—or should—be treated as a singular entity. The Settlement Agreement is intended to fully resolve this action, including all allegations in the Complaint relating to both of these retirement plans (*i.e.*, the 401(a) Plan and the 403(b) Plan).

submit this Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Settlement" or "Settlement Agreement") and related relief, along with a supporting memorandum. Plaintiffs respectfully move the Court for an Order granting the relief sought.[2] A proposed order is submitted herewith.

---

[2] The Settlement Agreement itself, attached to the Gyandoh Decl. as Exhibit 1, has several exhibits. These exhibits are: A (Postcard Notice); B (Long Form Notice); C (Plan of Allocation); D (Proposed Preliminary Approval Order); E (Proposed Final Order); and F (CAFA Notice). Capitalized terms herein shall have the meaning ascribed to them in the Settlement Agreement.

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ...................................................................................................1

    A.    Procedural History ...................................................................................1

    B.    Claims for Relief.......................................................................................2

    C.    Discovery ..................................................................................................2

III.    THE PROPOSED SETTLEMENT ....................................................................3

IV.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY
    APPROVED .........................................................................................................3

    A.    Legal Standard ..........................................................................................3

    B.    The Settlement Is Within the Range of Fairness, Reasonableness, and
        Adequacy and Also Satisfies FED. R. CIV. P. 23(e)(2).............................4

        1.    The Settlement is the product of arm's-length negotiations between
                experienced counsel .....................................................................5

        2.    The Proposed Class was adequately represented by Plaintiffs and
                Class Counsel...............................................................................6

        3.    The Settlement provides significant relief to Class Members
                through an effective distribution method and treats Class Members
                equitably.......................................................................................8

        4.    The merits of Plaintiffs' case and complexity and expense of
                further litigation weigh in favor of Settlement Approval ............7

        5.    The terms of the proposed attorneys' fees are reasonable ...........8

V.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED........................9

VI.    CLASS CERTIFICATION FOR SETTLEMENT IS APPROPRIATE...........11

    A.    The Proposed Class Satisfies the Requirements of Rule 23(a)..............11

        1.    The Class is Sufficiently Numerous ............................................11

        2.    There are Common Questions of Law and Fact .........................11

3.    Plaintiffs' Claims are Typical of the Class ...................................................12

4.    Plaintiffs and Class Counsel Will Adequately Protect the Interest of the Class....................................................................................................................12

    i.    Plaintiffs have no conflicts with other members of the class and will vigorously prosecute this action on behalf of the Class....................................................................................................................13

    ii.    Plaintiffs' Counsel have no conflicts with the Class, are qualified and experienced, and will vigorously prosecute this action for the Class.....................................................................14

B.    The Class May Be Properly Certified Under Rule 23(b)(1) ..................................15

    1.    Certification Under Rule 23(b)(1)(B) is Most Appropriate ...........................15

    2.    Certification is Also Appropriate Under Section 23(b)(1)(A)........................16

VII.    CONCLUSION.............................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..................................................................................................14

*Andrews v. Bechtel Power Corp.*,
780 F.2d 124 (1st Cir. 1985) ....................................................................................13

*Beach v. JPMorgan Chase Bank, N.A.*,
No. 17-cv-563, 2019 WL 2428631 (S.D.N.Y. June 11, 2019) .................................14

*Bekker v. Neuberger Berman Grp. 401(K) Plan Inv. Comm.*,
504 F. Supp. 3d 265 (S.D.N.Y. 2020) ........................................................................9

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324, 348 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015) ...............6

*In re Biogen ERISA Litig.*,
No. 20-cv-11325 (D. Mass. Nov. 8, 2022)..................................................................8

*Boley v. Universal Health Services, Inc.*
36 F.4th 124 (3d Cir. June 1, 2022)......................................................................12, 13

*Brotherston, v. Putnam Investments, LLC*,
No. 15-cv-13825 (D. Mass. April 6, 2021)..................................................................8

*Cohen v. Brown Univ.*,
16 F.4th 935 (1st Cir. 2021) .....................................................................................14

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008)..............................................................................8

*Diaz v. BTG Int'l Inc.*,
19-cv-1664, 2021 WL 2414580 (E.D. Pa. June 14, 2021).......................................5, 9

*Evans v. Akers*,
534 F.3d 65 (1st Cir. 2008) .......................................................................................13

*Garcia-Rubiera v. Calderon*,
570 F.3d 443 (1st Cir. 2009)......................................................................................12

*George v. Nat'l Water Main Cleaning Co.*,
286 F.R.D. 168 (D. Mass. 2012) ..........................................................................11, 14

*In re Global Crossing Securities and ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y 2004)..................................................................8

*Greenspun v. Bogan*,
492 F.2d 375 (1st Cir.1974) .....................................................................11

*Griffin v. Flagstar Bancorp, Inc.*,
No. 10-cv-10610, 2013 WL 6511860 (E. D. Mich. Dec. 12, 2013) ................9

*Hawkins v. Cintas Corp.*,
No. 19-cv-1062, 2025 WL 523909 (S.D. Ohio Feb. 18, 2025) .....................9

*Henderson v. Bank of N.Y. Mellon*,
332 F. Supp. 3d 419 (D. Mass. 2018) .......................................................13

*Hill v. State Street Corp.*,
No. 09-cv-12146, 2015 WL 127728 (D. Mass. Jan. 8, 2015).......................10

*Hochstadt v. Boston Scientific Corp.*,
708 F. Supp. 2d 95 (D. Mass. 2010) .....................................................3, 15

*Jones v. Novastar Financial, Inc.*,
257 F.R.D. 181 (W.D. Mo. 2009)..............................................................16

*Karpik v. Huntington Bancshares, Inc.*,
No. 17-cv-1153, 2021 WL 757123 (S.D. Ohio Feb. 18, 2021).......................5

*Kelly v. Johns Hopkins Univ.*,
No. 16-cv-2835, 2020 WL 434473 (D. Md. Jan. 28, 2020)...........................9

*Krueger v. Ameriprise Fin., Inc.*,
304 F.R.D. 559 (D. Minn. 2014)..............................................................14

*Krueger v. Ameriprise*,
No. 11–cv–02781, 2015 WL 4246879 (D. Minn. July 13, 2015) ...................7

*Kruger v. Novant Health, Inc.*,
No. 11–cv–02781, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) .................9

*LaLonde v. Textron, Inc.*,
369 F.3d 1 (1st Cir. 2004) .........................................................................7

*In re Lupron Mktg. & Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005) ..................................................................4

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
270 F.R.D. 45 (D. Mass. 2010) ................................................................................3

*McDonald v. Edward Jones*,
791 Fed.Appx. 638 (8th Cir. 2020) ..........................................................................9

*New England Biolabs, Inc. v. Miller*,
No. 20-cv-11234, 2022 WL 20583575 (D. Mass. Oct. 26, 2022)...........................7, 10

*In re Nortel Networks Corp. ERISA Litig.*,
2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009) ......................................................12

*Otte ex rel. Est. of Reynolds v. Life Ins. Co. of N. Am.*,
275 F.R.D. 50 (D. Mass. 2011) ..............................................................................13

*Pledger v. Reliance Trust Co.*,
No. 15-cv-4444, 2021 WL 2253497 (N.D. Ga. Mar. 8, 2021).................................9

*Ramos v. Banner Health*,
No. 15-cv-2556, 2020 WL 6585849 (D. Colo. Nov. 10, 2020) ..............................9

*Sacerdote v. New York Univ.*,
No. 16-cv-6284, 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) ...............................15

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
No. 08-cv-1432, 2012 WL 1964451 (D.N.J. May 31, 2012).................................7, 15

*Stengl v. L3Harris Techs., Inc.*,
No. 22-cv-572, 2023 WL 11932263 (M.D. Fla. June 5, 2023).................................12

*Swack v. Credit Suisse First Bos.*,
230 F.R.D. 250 (D. Mass. 2005) .............................................................................12

*Tracey v. MIT*,
No. 16-cv-11620, 2018 WL 5114167 (D. Mass. Oct. 19, 2018) .............................14

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)................................................................................................11

*Wachala v. Astella US LLC*,
20-cv-3882, 2022 WL 408108 (N.D. Ill. Feb. 10, 2022).........................................12

*Waldner v. Natixis Inv. Managers, L.P.*,
No. 21-cv-10273, 2023 WL 3466272 (D. Mass. Mar. 24, 2023),
*R. & R. adopted*, No. 21-cv-10273, 2023 WL 3467112 (D. Mass. May 15, 2023) ......................15

*Wright v. S. N.H. Univ.*,

565 F. Supp. 3d 193 (D.N.H. 2021) ................................................................5

**STATUTES**

28 U.S.C. §§ 1332(d), 1453, and 1711-1715 ...........................................16

29 U.S.C. § 1109(a) ........................................................................................1

29 U.S.C. § 1132(a)(2) ...................................................................................1

FED. R. CIV. P. 23 ...................................................................................13, 16

FED. R. CIV. P. 23(a) ...............................................................................6, 11

FED. R. CIV. P. 23(a)(1) ...............................................................................11

FED. R. CIV. P. 23(a)(3) ..........................................................................11, 12

FED. R. CIV. P. 23(a)(4) ................................................................................14

FED. R. CIV. P. 23(b)(1) ...............................................................................15

FED. R. CIV. P. 23(b)(1)(A) .........................................................................16

FED. R. CIV. P. 23(b)(1)(B) ......................................................................4, 15

FED. R. CIV. P. 23(c)(2) ...............................................................................10

FED. R. CIV. P. 23(e) .....................................................................................4

FED. R. CIV. P. 23(e)(2) .................................................................................4

FED. R. CIV.  23(e)(2)(C)(ii) ..........................................................................8

FED. R. CIV. P. 23(e)(3) .................................................................................4

FED. R. CIV. P. 23(g) ................................................................................6, 14

FED. R. CIV. P. 23(g)(1)(A)(i)-(iv) .................................................................6

**Other Sources**

1 William B. Rubenstein, Newberg on Class Actions (5th ed. 2012) ..................14

Class Action Fairness Act of 2005 ("CAFA") ...............................................16

Employee Retirement Income Security Act of 1974 ...........................*Passim*

MANUAL FOR COMPLEX LITIGATION (Fourth) (2004) ...........................................3

## I.        INTRODUCTION

Plaintiffs are pleased that after years of hard-fought litigation, they are able to present for preliminary approval a proposed settlement of a cash payment of eight hundred and fifty thousand dollars ($850,000.00). The Parties agreed to the proposed Settlement only after vigorous arm's-length negotiations between counsel experienced in ERISA class actions and under the auspices of Jed D. Melnick of JAMS, a third-party private mediator with extensive experience mediating ERISA actions. Plaintiffs believe the Settlement is an excellent result, providing a substantial, immediate payment to Settlement Class members and eliminating the risks and costs of continued litigation.

## II.       BACKGROUND

### A.        Procedural History

Plaintiffs commenced this action by filing a complaint on March 18, 2022. The Complaint alleged violations of the fiduciary duties of prudence imposed by ERISA § 404(a), 29 U.S.C. § 1104(a), and the fiduciary duty to adequately monitor other fiduciaries under 29 U.S.C. §§ 1109(a) and 1132(a)(2). Defendants filed their Motion to Dismiss Complaint on May 31, 2022. *See* ECF No. 22. Plaintiffs filed their Memorandum of Law in Opposition to Defendants' Motion to Dismiss on June 14, 2022. *See* ECF No. 24. Defendants filed their Reply on June 21, 2022. *See* ECF No. 25. On February 10, 2023, this Court issued an Endorsed Electronic Letter Order Denying Defendants' Motion to Dismiss in its entirety. Defendants filed their Answer to Plaintiffs' Complaint on March 10, 2023. *See* ECF No. 35.

The Parties attended a mediation on August 12, 2024, under the auspices of Jed D. Melnick of JAMS. *See* Gyandoh Decl., ¶ 30. Although the Parties did not reach a settlement that day, the session was productive as the Parties gained an understanding of their side's strengths and weaknesses. *Id*., ¶ 31. After the session the Parties continued to negotiate with ongoing

1

involvement from Mr. Melnick. *Id.*, ¶ 32. On October 22, 2024, Plaintiffs filed their Motion for

Class Certification and supporting documents. *See* ECF No. 62. On October 28, 2024, before the

close of class certification briefing, the Parties came to a settlement agreement in principle and

continued to discuss the final details of the settlement agreement. On October 31, 2024, the Parties

filed their Joint Notice of Settlement and requested that the Court suspend all potential deadlines

and dates (*see* ECF No. 63), which the Court approved by electronic order on November 1, 2024.

### B.    Claims for Relief

Plaintiffs allege that Defendants breached their fiduciary duties owed to the Plans and its

participants by, *inter alia*: (1) failing to implement and adhere to a prudent process for monitoring

and controlling recordkeeping fees and other administrative costs; (2) failing to monitor the

excessive investment management fees of certain mutual funds in the Plan; and (3) enabling certain

underperforming funds to languish in the Plan. *See* Compl., ¶¶ 54-103. Plaintiffs allege that

Defendants' breaches resulted in the Plan suffering millions of dollars in losses. *Id.*, ¶109.

Defendants deny all of these claims and deny that they ever engaged in any wrongful conduct, as

well as dispute the scope of the claims allegedly asserted in Plaintiffs' Complaint.

### C.    Discovery

Before initiating this action, Plaintiffs consulted with their in-house experts, reviewed

publicly filed Plan documents, and Plaintiffs' personal account information. *See* Gyandoh Decl., ¶

13. In the spring of 2023, the Parties exchanged their Initial Disclosures pursuant to Federal Rule

of Civil Procedure 26(A)(1), their first requests for the production of documents, and their first

sets of interrogatories. *Id.*, ¶¶ 15-17. In total, Defendants produced over 10,000 documents and

nearly 170,000 pages of documents. *Id.*, ¶ 21. On March 15, 2024, Plaintiffs took the Rule 30(b)(6)

Deposition of Defendants' Corporate Designee, Michael Waters. *Id.*, ¶ 22. All three Named

Plaintiffs were deposed in May of 2024. *Id.*, ¶¶ 23-35. Defendants' fact witnesses, Rodney A. Buck and Daniel P. Jantzen, were deposed on June 19, 2024, and July 12, 2024, respectively. *Id.*, ¶¶ 26-27. The Parties exchanged initial expert reports on October 8, 2024. *Id.*, ¶¶ 28-29.

## III.        THE PROPOSED SETTLEMENT

The Settlement provides Defendants and/or their insurer will pay $850,000.00 to the Plan to be allocated to participants pursuant to a Court-approved Plan of Allocation.[3] *See* Gyandoh Decl., ¶ 38. In exchange, Plaintiffs and the Plan will dismiss and release all their claims, as set forth more fully in the Settlement Agreement. The Settlement Agreement also proposes to allocate no more than $283,333.33 (one-third of the Gross Settlement Amount) for the payment of attorneys' fees, and Plaintiffs' Case Contribution Awards of no more than $10,000 per Plaintiff. *See* Gyandoh Decl., ¶¶ 42-43. Both of these awards are subject to Court approval.

## IV.        THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.        Legal Standard

Settlement approval involves two stages: "First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing." *Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 106-07 (D. Mass. 2010) (citing MANUAL FOR COMPLEX LITIGATION (Fourth) § 13.14 (2004)). At the preliminary approval stage, courts "examine the proposed settlement for obvious deficiencies before determining whether it is in the range of fair, reasonable, and adequate." *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010). "Approval is to be given if a settlement is untainted by collusion and is fair, adequate, and

---

[3] The Plan of Allocation, attached to the Settlement Agreement as Exhibit C, is premised on calculating a Plan participant's *pro rata* distribution based upon the individual's balances in the Plan during the Class Period.

reasonable." *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005). The ultimate fairness determination is left for final approval, after class members receive notice of the settlement and have an opportunity to be heard.

Further, Rule 23(e) states that, at the preliminary approval stage, the court must determine whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1)(B). Rule 23(e)(2), in turn, specifies the following factors the court must ultimately consider at the final approval stage in determining whether a settlement is "fair, reasonable, and adequate":

> (A)  the class representatives and class counsel have adequately represented the class;
>
> (B)  the proposal was negotiated at arm's length;
>
> (C)  the relief provided for the class is adequate, taking into account:
>
>> (i)  the costs, risks, and delay of trial and appeal;
>>
>> (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
>>
>> (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3)[4]; and
>
> (D)  the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

**B.    The Settlement Is Within the Range of Fairness, Reasonableness, and Adequacy and Also Satisfies FED. R. CIV. P. 23(e)(2)**

---

[4] Rule 23(e)(3) requires that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." FED. R. CIV. P. 23(e)(3). There are no agreements, other than the Settlement itself, in this case.

**1.    The Settlement is the product of arm's-length negotiations between experienced counsel**.

The Parties voluntarily negotiated the settlement with the assistance of a neutral, experienced mediator after a robust fact discovery phase and the beginning of expert discovery. Although an agreement was not reached during the mediation session, the session's exchange of damages and information productivity led to continued discussions and an eventual agreement. Hence, the resulting proposed Settlement is the product of arm's-length, informed negotiations. *See Wright v. S. N.H. Univ.*, 565 F. Supp. 3d 193, 206 (D.N.H. 2021) ("[T]he presumption of reasonableness applies here. The record establishes that counsel for the parties negotiated the Agreement at arm's length, at times with the assistance of an experienced and neutral mediator, following a thorough investigation and mutual exchange of evidence.").

Moreover, both Parties have retained counsel with experience and knowledge of ERISA and the claims at issue. Preliminary approval is warranted because "Class Counsel are skilled in class actions and ERISA litigation, and their recommendation that the Court should approve the Settlement is entitled to some deference." *Karpik v. Huntington Bancshares, Inc.*, No. 17-cv-1153, 2021 WL 757123 at * 6 (S.D. Ohio Feb. 18, 2021); *see also Diaz v. BTG Int'l Inc.*, 19-cv-1664, 2021 WL 2414580, at *8 (E.D. Pa. June 14, 2021) (appointing the undersigned as settlement Class Counsel in an ERISA case and stating that we "appear well-qualified to weigh the risks and benefits of continued litigation as compared to the relief provided by the Settlement."). Likewise, counsel for Defendants, Mayer Brown LLP, are one of the leading ERISA class action defense firms in the country and do not oppose the settlement.[5] In light of the forgoing, the Parties were clearly able

---

[5] *See* https://www.mayerbrown.com/en/services/erisa-litigation, last accessed June 17, 2025.

"to make an intelligent judgment about settlement." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 348 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015).

      **2.**      **The Proposed Class was adequately represented by Plaintiffs and Class Counsel**.

As discussed in Section VI.A.4.i *infra*, both Plaintiffs and Class Counsel have been, and will continue to be, adequate representatives of the Proposed Class in accordance with Rules 23(a) and 23(g). To appoint Class Counsel, Rule 23(g) directs consideration of: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A)(i)-(iv). Proposed Class Counsel, Capozzi Adler, P.C., has done substantial work, has experience litigating ERISA class actions, and has committed ample resources to prosecute this matter. *See* Gyandoh Decl. ¶¶ 46-57. Co-Counsel for the Class, Peter Muhic of Muhic Law LLC, is an accomplished trial lawyer who has tried complex cases to verdict in federal and state courts throughout the country and has extensive experience in ERISA litigation. *See id.*, ¶ 49. Mr. Muhic is a graduate of Temple University School of Law. *See id.*; biography at https://muhiclaw.com/. Additionally, the Settlement Class Members also have been adequately represented by the Plaintiffs. Throughout the course of this litigation, each Plaintiff has regularly conferred with their attorneys at Capozzi Adler regarding litigation updates and this Settlement, they have also provided Counsel with discovery and sat for depositions. *See* Adams Decl., ¶ 6; Mars Decl., ¶ 6; Miller Decl., ¶ 6; *see also* 62-1, Memorandum of Law in Support of Plaintiffs' Motion for Class Certification, at 8-12. All Plaintiffs were prepared to present and testify at trial, if necessary. *Id*.

3.    **The Settlement provides significant relief to Class Members through an effective distribution method and treats Class Members equitably**.

The Settlement Agreement, and plan of allocation provide immediate significant relief for the Class. "The plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable and adequate." *New England Biolabs, Inc. v. Miller*, No. 20-cv-11234, 2022 WL 20583575, at *4 (D. Mass. Oct. 26, 2022). The distribution plan allocates amounts to each participant on a *pro rata* basis, in proportion to the sum of that Class Member's Balance as compared to the sum of the Balance for all Class Members; however, no distribution will be made to Former Participants that are entitled to $5 or less. *See* Exhibit 1-C to the Gyandoh Declaration, Plan of Allocation. Courts routinely find that a *pro rata* distribution plan "is reasonable and equitable." *New England Biolabs, Inc.*, 2022 WL 20583575, at *4. Furthermore, for members with active accounts, "[t]he distribution takes place through the Plan[] so as to realize the tax advantage of investment in the Plan[]." *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-cv-1432, 2012 WL 1964451, *6 (D.N.J. May 31, 2012). The notice plan and plan of allocation are fair, reasonable, and adequate.

4.    **The merits of Plaintiffs' case and complexity and expense of further litigation weigh in favor of Settlement Approval**.

The costs and risks of litigating this action further favor approval of the Settlement. Undoubtedly, "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation.'" *Krueger v. Ameriprise*, No. 11–cv–02781, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015); *see also LaLonde v. Textron, Inc.*, 369 F.3d 1, 6 (1st Cir. 2004) (the First Circuit has described ERISA jurisprudence as an "important and complex area of law" that "is neither mature nor uniform. . .."). This case is no exception. The history of this case spans over three years, with both Parties spending significant costs and time on discovery and motion practice.

Without this settlement, the Parties would have to incur further expert, travel, court, and other costs that would both delay and reduce any recovery for Plaintiffs.

Moreover, although Plaintiffs are confident in their case, the potential upcoming summary judgment stage and trial brings real uncertainties for both sides. *See In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 496-97 (E.D. Mich. 2008) ("Plaintiffs admit that risk is inherent in any litigation, particularly class actions. The risk is even more acute in the complex areas of ERISA law."); *In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y 2004) ("In short, the legal and factual complexities and uncertainties of the ERISA damages case also militate in favor of settlement.").

Here, Plaintiffs initially estimated damages relating to Plaintiffs' claims to be over 10 million dollars. However, based on discovery received during the litigation and the mediation process, as well as Defendants' arguments against the viability of Plaintiffs' damages, Plaintiffs estimated their best case damages to be closer to $5 million. However, if any of Defendants' arguments were credited by the Court, it would reduce Plaintiffs' damages considerably, if not totally. This factor weighs heavily in favor of approval because without this Settlement, Plaintiffs would endure lengthy and expensive litigation at the risk of less or no recovery at all.

**5.    The terms of the proposed attorneys' fees are reasonable**.

The Settlement provides for a proposed maximum of one third of the Gross Settlement Amount in attorneys' fees to be paid after the Settlement becomes final. Gyandoh Decl., ¶ 42. This amount is in line with analogous awards in ERISA class action cases and will likely be approved by the Court, so the requirement of Rule 23(e)(2)(C)(ii) will likely be met. *See*, *e.g.*, *Brotherston, v. Putnam Investments, LLC*, No. 15-cv-13825 (ECF No. 237) (D. Mass. April 6, 2021) (affirming judgment that awarded the class counsel attorneys' fees of 1/3 of the settlement fund); *In re Biogen*

*ERISA Litig.*, No. 20-cv-11325, Dkt. No. 128 (D. Mass. Nov. 8, 2022) (awarding fees of 1/3 the settlement fund in an analogous ERISA excessive fee and imprudent investment case); *McDonald v. Edward Jones*, 791 Fed.Appx. 638, 640 (8th Cir. 2020) (an ERISA case affirming judgment that awarded the class counsel attorneys' fees of 1/3 of the settlement fund); *Hawkins v. Cintas Corp.*, No. 19-cv-1062, 2025 WL 523909, at *3 (S.D. Ohio Feb. 18, 2025) ("[T]he requested award of one-third of the common fund is consistent with fees awarded in similar [ERISA] actions in this circuit and across the country."); *Pledger v. Reliance Trust Co.*, No. 15-cv-4444, 2021 WL 2253497, at **5,7 (N.D. Ga. Mar. 8, 2021) (awarding attorney's fees of one third the common fund because "[t]he percentage used to calculate the requested fee in this case is consistent with experienced attorneys who handle complex ERISA litigation, and has been found reasonable in numerous cases in federal district courts."); *Diaz*, 2021 WL 2414580, at *8 (same); *Ramos v. Banner Health*, No. 15-cv-2556, 2020 WL 6585849, at *4-5 (D. Colo. Nov. 10, 2020) (awarding "one-third of any recovery plus expenses."); *Griffin v. Flagstar Bancorp, Inc.*, No. 10-cv-10610, 2013 WL 6511860, at *8, (E. D. Mich. Dec. 12, 2013) (the class counsels' "requested fee is consistent with standard fee awards as a percentage of the fund in ERISA actions which typically award between 30% and 33% on a percentage of the fund fee calculation."); *Bekker v. Neuberger Berman Grp. 401(K) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 270 (S.D.N.Y. 2020) (same); *Kruger v. Novant Health, Inc.*, No. 11–cv–02781, 2016 WL 6769066, at *6 (M.D.N.C. Sept. 29, 2016); *Kelly v. Johns Hopkins Univ.*, No. 16-cv-2835, 2020 WL 434473, at *3 (D. Md. Jan. 28, 2020).

In short, Plaintiffs' requested fee award is in line with ERISA fee awards across the Nation and is justified by the complexity and risk of this litigation.

## V.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

In addition to preliminarily approving the Settlement Agreement, the Court must also

approve the proposed means of notifying class members. FED. R. CIV. P. 23(c)(2). Plaintiffs have selected Analytics LLC ("Analytics") to be the Settlement Administrator. Analytics is highly experienced in class action claims administration. Upon preliminary approval, Analytics will mail, by first class mail, the Court-approved Short Form Postcard Settlement Notice to Settlement Class members using addresses from employment records and documents associated with the Plan. This Postcard notice informs Class Members of the Settlement and provides the Settlement Website information where Class Members can obtain more information, including the Long Form Settlement Notice, which has more detailed information about the Settlement.

Analytics will administer a skip trace and receive updated address information for any notices that are returned for lack of a forwarding address and re-mail the notices to the updated addresses. This type of notice is presumptively reasonable. *See New England Biolabs, Inc.*, 2022 WL 20583575, at *4 ("Notice provided by first class mail is sufficient when the names and addresses of the class members are known."). Additionally, as noted above, Analytics will establish a Settlement Website providing Settlement Class members with important case documents, pertinent information, and contact information for the Settlement Administrator, Class counsel, and Defense counsel. Lastly, Analytics will institute a case-specific toll-free number for members to listen to an Interactive Voice Response ("IVR") system or speak with a live agent.

The content of the Settlement Notice[6] (is also fair, reasonable, and adequate. The Notice includes, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims; (5) instructions regarding payment to former participants; (6) instructions as to how to

---

[6] "Settlement Notice" as used here refers to both the Long Form and Short Form Settlement Notices.

object to the Settlement and the date by which Settlement Class Members must object; (7) information regarding Class Counsel and the amount that Class Counsel will seek in Attorneys' Fees; and (8) information regarding the amount of Case Contribution Awards to be paid from the Gross Settlement Amount. *See* Settlement Agreement, Exhibits A and B. The Notice is clearly reasonable as it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them." *Hill v. State Street Corp.*, No. 09-cv-12146, 2015 WL 127728, at *15 (D. Mass. Jan. 8, 2015) (quoting *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir.1974)) (internal citations omitted).

## VI.    CLASS CERTIFICATION FOR SETTLEMENT IS APPROPRIATE[7]

### A.    The Proposed Class Satisfies the Requirements of Rule 23(a)

#### 1.    The Class is Sufficiently Numerous

Here the 2020 Form 5500s for the Plans list a combined 31,256 "participants with account balances." Compl., ¶ 36.[8] Thus, FED. R. CIV. P. 23(a)(1) is satisfied because "courts have generally found that a class size of forty or more individuals will satisfy the numerosity requirement." *George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 173 (D. Mass. 2012).

#### 2.    There are Common Questions of Law and Fact

Commonality, or Rule 23(a)(3), concerns "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Even a single common question will do." *Id*. at 359 (cleaned up)). In ERISA cases involving defined-contribution plans, commonality "is easily satisfied"

---

[7] Plaintiffs' arguments for Class Certification are more fully detailed in their Memorandum of Law in Support of Plaintiffs' Motion for Class Certification. *See* ECF No. 62-01.

[8] This "combined" total includes participants that may be double-counted due to their participation in both the 401(a) Plan and the 403(b) Plan.

because "fund participants operate against a common background, and allegations that a fiduciary has breached its duties in the selection of investment options describe a problem that operates across the plan rather than at the individual level.'" *Wachala v. Astella US LLC*, 20-cv-3882, 2022 WL 408108, at *5 (N.D. Ill. Feb. 10, 2022) (internal citations omitted). The same is true here.

The overarching questions of law and fact applicable to all Plan participants are whether Defendants breached fiduciary duties owed to the Plan and its participants by failing to monitor or control the compensation paid for recordkeeping and administration services, whether the Plan's fees were reasonable, and whether the monitoring Defendants failed to monitor the AIOC. *See* Compl., ¶ 38. Moreover, all Plan participants were subject to the AIOC's decisions regarding the Plan. *See Stengl v. L3Harris Techs., Inc.*, No. 22-cv-572, 2023 WL 11932263, at *2 (M.D. Fla. June 5, 2023) ("a common question exists as to whether Defendants breached ERISA's duty of prudence in connection with […] monitoring the compensation paid for recordkeeping and administration services."). All of these questions are sufficient to satisfy Plaintiffs' burden under Rule 23(a)(2) because they "are focused solely on Defendants and their actions, and will require the same proof for all class members." *In re Nortel Networks Corp. ERISA Litig.*, 2009 WL 3294827, at *8 (M.D. Tenn. Sept. 2, 2009).

### 3.    Plaintiffs' Claims are Typical of the Class

FED. R. CIV. P. 23 (a)(3)'s "typicality" prong is satisfied when "Plaintiffs' claims arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009) (citations omitted). However, "the typicality requirement does not mandate that the claims of the class representative be identical to those of the absent class members." *Swack v. Credit Suisse First Bos.*, 230 F.R.D. 250, 260 (D. Mass. 2005). The Third Circuit in *Boley v.*

*Universal Health Services, Inc.* held that typicality was satisfied in an analogous case because, "[e]ach participant's potential recovery, regardless of the fund in which he or she invested, is under the same legal theory—Universal's breach of its fiduciary duty under ERISA in managing the Plan's investment options." *Boley*, 36 F.4th 124, 134 (3d Cir. June 1, 2022); *see also Evans v. Akers*, 534 F.3d 65, 70 n.4 (1st Cir. 2008) ("those who bring suit do so on behalf of the plan and the plan takes legal title to any recovery"). Here, Plaintiffs satisfy the typicality prong of Rule 23 because they were all subject to the Plan's administration and recordkeeping fees that are challenged in the Complaint. Plaintiffs' theory of liability and damages are/were based on the same type of alleged injury.

### 4.    Plaintiffs and Class Counsel Will Adequately Protect the Interest of the Class

"The First Circuit has enunciated two elements to the adequacy requirement: (1) 'that the interests of the representative party will not conflict with the interests of any of the class members,' and (2) 'that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.'" *Henderson v. Bank of N.Y. Mellon*, 332 F. Supp. 3d 419, 430 (D. Mass. 2018) (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)). Here both Plaintiffs and the proposed Class Counsel provide adequate representation.

### i.    Plaintiffs have no conflicts with other members of the class and will vigorously prosecute this action on behalf of the Class

For plaintiffs to satisfy adequacy, "all that is required of her is a general knowledge of the contours of the litigation and personal participation in discovery events." *Otte ex rel. Est. of Reynolds v. Life Ins. Co. of N. Am.*, 275 F.R.D. 50, 57 (D. Mass. 2011) (citations omitted). The Plaintiffs have proven to be adequate representatives thus far. Each Plaintiff has provided documents, remained in contact with Class Counsel, sat for depositions, and testified to their

13

continuing dedication to serving as a representatives of the Class and their understanding of this litigation. *See* Gyandoh Decl., ¶¶ 23-25, 43, 59-62; *see also* Adams Decl., ¶ 6; Mars Decl., ¶ 6; Miller Decl., ¶ 6.

Furthermore, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Cohen v. Brown Univ.*, 16 F.4th 935, 945 (1st Cir. 2021) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). The adequacy inquiry also overlaps with typicality. *Id.* Here, Plaintiffs do not have any conflicts with the class, particularly because they are bringing this suit on behalf of the Plan and participants as a whole. Indeed, "because the crux" of ERISA breach of fiduciary duty cases, "hinges on whether defendants acted imprudently with respect to the Plan and not the investments of individual participants, this Court [should] find[] no substantial intra-class conflict in the proposed class." *Tracey v. MIT*, No. 16-cv-11620, 2018 WL 5114167, at * 6 (D. Mass. Oct. 19, 2018); *see also Beach v. JPMorgan Chase Bank, N.A.*, No. 17-cv-563, 2019 WL 2428631, at * 8 (S.D.N.Y. June 11, 2019) (similar); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 575 (D. Minn. 2014) (similar). Plaintiffs are adequate class representatives.

      **ii.**      **Plaintiffs' Counsel have no conflicts with the Class, are qualified and experienced, and will vigorously prosecute this action for the Class**

The inquiry into the adequacy of class counsel under Rule 23(a)(4) is redirected into the adequacy of the class representatives and is analyzed under factors set forth in Rule 23(g) listed in Section IV.B.2. *Supra. See George*, 286 F.R.D. at 178 n.6 (citing 1 William B. Rubenstein, Newberg on Class Actions §§ 3:54-3:55, 3:80-3:81 (5th ed. 2012)). Capozzi Adler and the undersigned counsel exercised their extensive experience and knowledge of ERISA matters at every stage of this litigation. Mark K. Gyandoh is a partner and chair of the Fiduciary Practice

Group at Capozzi Adler and has been litigating ERISA fiduciary breach lawsuits for 19 years and he and Capozzi Adler currently serve as counsel in over two dozen fiduciary breach actions across the country. Gyandoh Decl., ¶¶ 46-56. Class Counsel conducted a thorough pre-filing investigation in this case, successfully litigated this case through the motion to dismiss stage, conducted extensive discovery, and successfully obtained a Settlement. *Id*., ¶¶ 3-28, 57. Accordingly, appointing Capozzi Adler as Class Counsel is warranted.

### B.    The Class May Be Properly Certified Under Rule 23(b)(1)

#### 1.    Certification Under Rule 23(b)(1)(B) is Most Appropriate

"In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." *In re Schering Plough Corp. ERISA Litig*., 589 F.3d 585, 604 (3d Cir. 2009). Certification under Rule 23(b)(1)(B) is most appropriate, and is the norm for cases alleging a breach of fiduciary obligations to plaintiffs. *See, e.g.*, *Hochstadt*, 708 F.Supp. 2d at 105-06 ("Given that the present case involves an ERISA § 502(a)(2) claim brought on behalf of the Plan and alleging breaches of fiduciary duty on the part of Defendants that will, if true, be the same with respect to every class member, I find that Rule 23(b)(1)(B) is clearly satisfied."); *Waldner v. Natixis Inv. Managers, L.P*., No. 21-cv-10273, 2023 WL 3466272, at *19 (D. Mass. Mar. 24, 2023), *R. & R. adopted*, No. 21-cv-10273, 2023 WL 3467112 (D. Mass. May 15, 2023); *Sacerdote v. New York Univ*., No. 16-cv-6284, 2018 WL 840364, at *6 (S.D.N.Y. Feb. 13, 2018) ("Most ERISA class action cases are certified under Rule 23(b)(1)."). This case is no exception because the only remedy available to participants in the Plan is Plan-wide relief. Thus, the proposed Class meets the requirements of FED. R. CIV. P. 23(b)(1), given the nature of this action and the relief sought on behalf of the Class.

### 2.    Certification is Also Appropriate Under Section 23(b)(1)(A)

Rule 23(b)(1)(A) may also be used in this case because Defendants were obligated to treat all class members (as participants) alike in discharging their fiduciary duties to the Plan. *See*, *e.g.*, *Jones v. Novastar Financial, Inc.*, 257 F.R.D. 181, 194 (W.D. Mo. 2009) ("Rule 23(b)(1)(A) certification is particularly appropriate" because "the central questions concerning whether the fiduciaries breached their duties to the Plan are not individual.").

## VII.    CONCLUSION

Plaintiffs propose the Fairness Hearing be scheduled at least 90 days after entry of the Preliminary Approval Order in order to provide the Settlement Class with fair notice and the opportunity to be heard, as well as to provide notice to appropriate federal and state officials as required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711-1715. The submitted proposed preliminary approval order sets forth the proposed schedule of events which are subject to the Court's approval. For the reasons set forth above, the Settlement meets the standard for preliminary approval under Rule 23.

Dated:  June 17, 2025                                  Respectfully submitted,

By: */s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire
(*Admitted Pro Hac Vice*)
Jay Wells, Esquire
(*Admitted Pro Hac Vice*)
**CAPOZZI ADLER, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
Email: markg@capozziadler.com
          jaw@capozziadler.com
Telephone:  (610) 890-0200
Fax: (717) 233-4103

**MUHIC LAW LLC**
Peter A. Muhic
(*Admitted Pro Hac Vice*)
923 Haddonfield Road, Suite 300
Cherry Hill, NJ  08002
Phone:  (856) 242-1802
Fax:     (717) 233-4103
Email:  peter@muhiclaw.com

*Attorneys for Plaintiffs*

17

## RULE 7.1 CERTIFICATE

Counsel for the parties hereby certify that they met and conferred regarded the requested relief. The parties jointly request and consent to the requested relief.

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2025, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh