UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Debra M. Adams, et al.

v.

Dartmouth-Hitchcock Clinic, et al.

Civil No. 22-cv-099-LM
Opinion No. 2026 DNH 027 P

**O R D E R**

Plaintiffs Debra Adams, Danillie Mars, and Michelle Miller (collectively, "plaintiffs") bring this putative class action against Dartmouth-Hitchcock Clinic, its Board of Trustees, the Administrative Investment Oversight Committee of Dartmouth-Hitchcock Clinic, and "John Does 1-30" ("defendants") asserting injuries arising from defendants' alleged breach of their fiduciary duties to effectively manage and monitor plaintiffs' retirement plans under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

Defendants previously filed a motion to dismiss this action (doc. no. 22) which this court denied. The parties now report that they have reached a negotiated settlement. Before the court is plaintiffs' unopposed motion (doc. no. 65) seeking preliminary approval of the parties' proposed Class Action Settlement Agreement (doc no. 65-2) (hereinafter the "Agreement") as well as preliminary certification of the proposed class for purposes of settlement. The court has carefully reviewed the Agreement and its supporting exhibits. For the following reasons, the court: (1) preliminarily approves the Agreement; (2) preliminarily certifies the proposed class for settlement purposes; (3) appoints Analytics LLC to administer the settlement

and preliminarily appoints plaintiffs as class representatives for the settlement class, and Capozzi Adler, P.C. as class counsel; (4) approves the objection procedures outlined by the parties, subject to changes described in this order; and (5) directs the parties to submit updated proposed notice forms to bring them into conformity with the requirements of due process and Fed. R. Civ. P. 23(e)(1). The court declines to set a schedule for the fairness hearing and related deadlines until the notices are approved.

## BACKGROUND

ERISA governs "employee benefit plans" that cover employees' retirement benefits and sets forth several civil enforcement provisions. See 29 U.S.C. § 1132(a). "If an ERISA fiduciary breaches their fiduciary duty, Section 409 makes them liable to the plan." Slim v. Life Ins. Co. of N. Am., No. CV 24-1162(GMM), 2024 WL 4870537, at *3 (D.P.R. Nov. 22, 2024). In this case, plaintiffs are participants in the Dartmouth-Hitchcock Retirement Plan and the Dartmouth-Hitchcock Employee Investment Plan (collectively, the "Plans"). They assert two claims on behalf of the Plans, themselves, and all others similarly situated. In their first claim, plaintiffs allege that the Administrative Investment Oversight Committee of Dartmouth-Hitchcock Clinic and its members ("Committee Defendants"), which directly oversee the Plans, breached their fiduciary duty of prudence by failing to sufficiently monitor and control recordkeeping and administrative costs and fees, and by imprudently investing certain funds. In their second claim, plaintiffs allege that

2

Dartmouth-Hitchcock Clinic and its Board of Trustees ("Monitoring Defendants") breached their duties to adequately monitor the Committee Defendants.

Plaintiffs filed their complaint on March 18, 2022. On May 31, 2022, defendants filed a motion to dismiss, which the court later denied. Over the course of this litigation, the parties have engaged in discovery and employed the services of an independent mediator, who ultimately helped them arrive at this settlement.

## DISCUSSION

I.    Court Approval of Class Action Settlements

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The court's role in the settlement approval process is to serve as a fiduciary for the absent class members, and to protect them from an unjust or unfair settlement. Grenier v. Granite State Credit Union, 344 F.R.D. 356, 366 (D.N.H. 2023).

Court approval of a class action settlement proceeds in two stages. Rapuano v. Trs. of Dartmouth Coll., 334 F.R.D. 637, 642 (D.N.H. 2020). First, the parties present a proposed settlement to the court for "preliminary approval." 4 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 13.10 (6th ed.). At the preliminary approval stage, the court must determine whether it "will likely be able to" grant final approval to the settlement proposal under Rule 23(e)(2) of the Federal Rules of Civil Procedure—i.e., the court must find it likely that the

settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(B), (2); see Rapuano, 334 F.R.D. at 642-43. In addition, if the court has not yet certified the class, the preliminary approval stage typically involves a request from the parties that the court provisionally certify the class for purposes of settlement. See Rubenstein, supra, § 13.10.

If the court is satisfied that it will "likely be able to" (1) certify the class for purposes of judgment on the proposed settlement; and (2) approve the settlement proposal under Rule 23(e)(2), then the court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B); see Rapuano, 334 F.R.D. at 642. After notice to the class, the court holds a "fairness hearing" at which class members may appear to support or object to the proposed settlement. See Rubenstein, supra, § 13.10.

At the second stage of the inquiry, the court determines whether it can grant final approval of the proposed settlement. See id. Under Rule 23(e)(2), the court may grant final approval of a class action settlement if it can certify the proposed class, see Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 621 (1997), and if it finds that the proposed agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The First Circuit has recognized as an "important concern" the policy to encourage and facilitate class action settlements where appropriate under Rule 23(e). Howe v. Townsend, 588 F.3d 24, 36 (1st Cir. 2009) (citing Durrett v. Hous. Auth., 896 F.2d 600, 604 (1st Cir. 1990)).

II.    <u>Preliminary Certification of the Proposed Class for Settlement Purposes and Preliminary Appointment of Class Counsel and Class Representative</u>

To obtain certification of a class—whether for settlement or litigation purposes—the court must find that all four prerequisites set forth in Federal Rule of Civil Procedure 23(a) are met. <u>See</u> Amchem, 521 U.S. at 620-21. These are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. <u>See</u> Fed. R. Civ. P. 23(a); Amchem, 521 U.S. at 613. In addition to those threshold requirements, a party seeking certification must also show that the action falls into one of the categories outlined in Rule 23(b). <u>See</u> Amchem, 521 U.S. at 614. Here, plaintiffs seek certification under Rule 23(b)(1)(B). To qualify for certification under Rule 23(b)(1)(B), the party seeking certification must prove that separate actions by or against individual class members would create a risk of "adjudications . . . that, as a practical matter, would be dispositive of the interests of the other [class] members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B); <u>see</u> Amchem, 521 U.S. at 614.

Here, plaintiffs seek preliminary class certification for purposes of settlement. The settlement class is defined as:

> [A]ll persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plans, and any Alternate Payee of a Person subject to a QDRO [Qualified Domestic Relations Order] who participated in the Plans, at any time during the Class Period [March 18, 2016 through the date of the Preliminary Approval Order].

5

Doc. no. 65-2 at 10. The court addresses the Rule 23(a) and 23(b)(1)(B) requirements below.

### A.   Rule 23(a) Threshold Requirements

#### 1.   Numerosity

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Clough v. Revenue Frontier, LLC, Civ. No. 17-cv-411-PB, 2019 WL 2527300, at *3 (D.N.H. June 19, 2019) (quoting Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009)). Here, the settlement class consists of over 31,000 plan participants. See doc. no. 1 at 9. The size of the proposed class will likely be more than sufficient to satisfy the numerosity requirement because joinder of all the class members is impracticable.

#### 2.   Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is a "low bar," and complete commonality of questions among the putative class members is not required. In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 19 (1st Cir. 2008); 7A Wright & Miller's Federal Practice & Procedure § 1763 (4th ed.). To establish commonality, a plaintiff must show that all putative class members "have suffered the same injury." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) (quoting

General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157 (1982)). This means that the putative class members' "claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

Commonality is likely satisfied here. Every class member shares essentially identical questions of law and fact: did the Monitoring Defendants fail to monitor the Committee defendants, and did the Committee Defendants breach their fiduciary duties by failing to control the compensation paid for recordkeeping and administration services, failing to monitor investment management fees, and imprudently investing certain funds. These questions are very likely sufficient to establish commonality because they "are focused solely on Defendants and their actions, and will require the same proof for all class members." In re Nortel Networks Corp. ERISA Litig., No. 3:03-MD-01537, 2009 WL 3294827, at *8 (M.D. Tenn. Sept. 2, 2009); see also Stengl v. L3Harris Techs., Inc., No. 6:22-sc-572-PGB-LHP, 2023 WL 11932263, at *2 (M.D. Fla. June 5, 2023) ("[A] common question exists as to whether Defendants breached ERISA's duty of prudence in connection with selecting and monitoring the Plan's investment options and monitoring the compensation paid for recordkeeping and administration services.").

    3.    Typicality

The third threshold requirement of Rule 23(a)—typicality—requires the class representative to show that her claims are typical of the absent class members'

7

claims. Fed. R. Civ. P. 23(a)(3). To be typical, the representative's claims must "arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and [be] based on the same legal theory." Garcia-Rubiera, 570 F.3d at 460 (brackets and ellipsis omitted) (quoting In re Am. Med. Sys., Inc., 75 F.3d 1069, 1082 (6th Cir. 1996)); see also Falcon, 457 U.S. at 156 (observing that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." (quoting E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 1977))). "The representative plaintiffs' claims and those of absent class members need not be identical; they need only 'share the same essential characteristics.'" Rapuano, 334 F.R.D. at 648 (quoting Ouadani v. Dynamex Operations E., LLC, 405 F. Supp. 3d 149, 162 (D. Mass. 2019)).

As with commonality, plaintiffs are likely to meet the typicality requirement. All three proposed class representatives—Adams, Mars, and Miller—participated in the Plans and were subject to what they allege to be excessive administration and recordkeeping costs, imprudent management, and a lack of oversight. Plaintiffs allege that defendants' violations caused damage to the Plans themselves and all Plan participants' retirement savings. See doc. no. 1 at 29-31. Moreover, each of the plaintiffs' and class members' claims are predicated on the same underlying legal theory: that defendants breached their fiduciary duties under ERISA owed to the Plans and their participants by failing to adequately monitor, oversee, and prudently invest the Plans. Thus, because plaintiffs' claims arise from the same

practice that gives rise to the claims of the other class members and all are based on the same legal theories, it is likely that the court will find that typicality is met.[1] See Garcia-Rubiera, 570 F.3d at 460.

> ### 4.    Adequacy

The last of the Rule 23(a) threshold requirements is adequacy, which requires that the class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy requirement, plaintiffs must show "first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the proposed litigation." Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985).

As for the first prong, all named plaintiffs have participated in and express a willingness to continue to participate in the litigation. See, e.g., docs. nos. 65-3; 65-4; 65-5 (declarations of plaintiffs). Further, nothing in the record before the court suggests a conflict of interest between any of the potential class representatives and the absent class members. As for the second prong, the court is satisfied that the proposed class counsel (Capozzi Adler) is "qualified, experienced, and able to

---

[1] It is immaterial that class members likely did not invest in the Plans identically. See Boley v. Universal Health Servs., Inc., 36 F.4th 124, 134 (3d Cir. 2022) ("Each participant's potential recovery, regardless of the fund in which he or she invested, is under the same legal theory—[defendant's] breach of its fiduciary duty under ERISA. . .").

vigorously conduct the proposed litigation." Andrews, 780 F.2d at 130. Plaintiffs'

counsel is experienced and frequently serves as class counsel in other ERISA cases

of similar complexity. See infra Part II.C. The court will likely be able to find that

plaintiffs and their chosen counsel meet the adequacy requirements of Rule 23(a)(4).

B.    Rule 23(b)(1)(B)

Fed. R. Civ. P. 23(b)(1) generally "encompasses cases in which the defendant

is obliged to treat class members alike or where class members are making claims

against a fund insufficient to satisfy all of the claims." In re Tyco Int'l, Ltd., No.

MD-02-1335-PB, 2006 WL 2349338, at *3 (D.N.H. Aug. 15, 2006) (quoting Allison v.

Citgo Petrol. Corp., 151 F.3d 402, 412 (5th Cir. 1998)). Plaintiffs seek certification

under Rule 23(b)(1)(B).[2] A class is properly certified under Rule 23(b)(1)(B) when

the Rule 23(a) threshold requirements are met, and "prosecuting separate actions

by or against individual class members would create a risk of . . . adjudications with

respect to individual class members that, as a practical matter, would be dispositive

of the interests of the other members not parties to the individual adjudications or

would substantially impair or impede their ability to protect their interests." Fed. R.

Civ. P. 23(b)(1)(B). Certification under Rule 23(b)(1)(B) is appropriate in actions

charging "a breach of trust by an indenture trustee or other fiduciary similarly

---

[2] In the alternative, plaintiffs argue that certification is also appropriate under Rule 23(b)(1)(A). Because the court finds that certification under Rule 23(b)(1)(B) is appropriate, it need not decide whether certification under Rule 23(b)(1)(A) would also be appropriate.

affecting the members of a large class of . . . beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23(b)(1)(B) advisory committee's note to 1966 amendment. "In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." Hochstadt v. Bos. Sci. Corp., 708 F. Supp. 2d 95, 105 (D. Mass. 2010) (brackets omitted) (quoting In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 604 (3rd Cir.2009)).

Here, plaintiffs' claims fit this paradigm. They arise out of Section 502(a)(2) of ERISA (29 U.S.C. § 1132(a)(2)) and are brought on behalf of the Plan. Plaintiffs' claims that defendants breached their fiduciary duties will, "if true, be the same with respect to every class member." In re Schering Plough, 589 F.3d at 604-05. Moreover, because such suits are brought on the Plans' behalf, any individual success on the merits would result in plan-wide relief, and any individual failure could preclude other Plan participants from litigating their own claims for the same plan-wide relief. In re Tyco Int'l, 2006 WL 2349338, at *8. Accordingly, the court finds that it will likely be able to certify the proposed class for the purposes of settlement under 23(b)(1)(B).

C.    Appointment of Class Counsel Under Rule 23(g)

In connection with class certification, the court must address appointment of class counsel under Federal Rule of Civil Procedure 23(g). The court considers the

11

work plaintiffs' chosen counsel has done so far in identifying and investigating class claims, counsel's class action and complex litigation experience, counsel's knowledge of the applicable law, and counsel's available resources for pursuing the litigation. See Fed. R. Civ. P. 23(g)(1)(A). In addition, counsel "must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

Here, plaintiffs' counsel has shown that they are fit to represent the class. Attorneys at Capozzi Adler, including counsel of record in this case, Attorney Mark K. Gyandoh, have investigated plaintiffs' claims and litigated this lawsuit for years before the court. As part of that litigation, counsel has conducted extensive discovery, successfully defeated a motion to dismiss, and negotiated a settlement. The attorneys at Capozzi Adler have a great deal of experience in ERISA litigation. Attorney Gyandoh is a partner and chair of Capozzi Adler's Fiduciary Practice Group and has been litigating ERISA fiduciary breach lawsuits for nineteen years. Capozzi Adler has been appointed class counsel in many cases and has successfully litigated at both the trial and appellate level. See, e.g., doc. no. 65-1 at 7-10. Capozzi Adler has also demonstrated that it has the resources to continue to pursue this litigation. Finally, the court is satisfied that Capozzi Adler will fairly and adequately represent the interests of the class. For these reasons, plaintiffs' counsel of record is provisionally appointed as class counsel for the purposes of preliminary certification, pursuant to Rule 23(g).

D.    Preliminary Certification of the Proposed Class and Appointment of Class Representative and Class Counsel

For the reasons discussed above, the court preliminarily certifies the proposed class for settlement purposes. The court provisionally appoints plaintiffs Adams, Mars, and Miller as the settlement class representatives, and their chosen counsel, Capozzi Adler, as settlement class counsel in this matter. In the event the court ultimately denies final approval of the parties' proposed settlement agreement, the court's preliminary certification of the class and provisional appointments of class counsel and class representative shall be vacated. See Rapuano, 334 F.R.D. at 643.

The court now turns to whether the proposed class action settlement Agreement (doc. no. 65-2) merits preliminary approval.

III.    Preliminary Approval of the Proposed Settlement

At this preliminary stage of the approval process, the court must determine whether it will "likely" be able to find that the proposed class action settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "This threshold may be met by showing that the proposed settlement falls 'within the range of possible final approval' and that it is not 'illegal or collusive.'" Rapuano, 334 F.R.D. at 654 (quoting Scott v. First Am. Title Ins. Co., Civ. No. 06-cv-286-JD, 2008 WL 4820498, at *3 (D.N.H. Nov. 5, 2008)). "In effect, the role of the court is to serve as a fiduciary for the absent class members, and to protect them from an unjust or unfair settlement." Wright v. S. N.H. Univ., 565 F. Supp. 3d 193, 206 (D.N.H. 2021).

"There is a presumption that a negotiated settlement is within the range of reasonableness 'when sufficient discovery has been provided and the parties have bargained at arms-length.'" Id. (brackets omitted) (quoting City P'ship Co. v. Atl. Acquisition Ltd. P'ship, 100 F.3d 1041, 1043 (1st Cir. 1996)).

As an initial matter, the presumption of reasonableness applies in this case because the record establishes that counsel for the parties negotiated the proposed settlement at arm's length, at times with the assistance with an experienced and neutral mediator, following a thorough investigation and exchange of evidence.[3] See id. The parties have completed extensive fact discovery, including the exchange of thousands of pages of documents and taking the depositions of each named plaintiff and various defendant-affiliated witnesses. The parties have also begun expert discovery, with three experts issuing opening reports on behalf of defendants, and one expert issuing an opening report on behalf of plaintiffs. "As a result, the plaintiffs possess[] the facts necessary to understand the merits of their case." See Grenier, 344 F.R.D. at 367.

Moreover, review of the parties' Agreement establishes that the court will likely be able to find that its terms are fair, reasonable, and adequate. As detailed above, see Part II.A.4, the class representatives and class counsel have adequately represented the class. Under the Agreement, defendants will pay $850,000 (the "Gross Settlement Amount") to a settlement fund. The fund, held in escrow, will be

---

[3] There are no agreements between the parties in this case, other than the Agreement itself. See Fed. R. Civ. P. 23(e)(3).

14

used to pay class members' recoveries, administrative expenses, plaintiffs' counsel's attorney fees and costs, and class representatives' compensation, as awarded by the court. The participants' recoveries will be allocated on a pro-rata basis. In other words, funds from the settlement will be allocated to each class member based on the proportion of the sum of that class member's balance as compared to the sum of the balance for all class members. Class members with an active account (i.e., one with a positive balance) will have their proceeds paid directly into their Plan account. Former Plan participants will be paid by check.[4]

The proposed payments to class members give adequate, reasonable, and fair relief to the settlement class without requiring class members to incur the risks, burdens, costs, or delay associated with continued litigation, trial, and possible appeal. As the length of this litigation shows, both parties have spent and, absent settlement, would continue to spend significant resources on discovery and motion practice. While the Gross Settlement Amount is significantly less than what plaintiffs originally estimated their damages to be (over $10,000,000), plaintiffs represent that information learned during discovery and the uncertainty of ongoing litigation has the potential to reduce plaintiffs' recovery significantly, if not completely. The court notes that under the Agreement's plan of allocation, class members will not have to submit a claim form, but will receive compensation directly into their accounts, or have a check mailed to them in the case of an

---

[4] Pursuant to the Agreement, those entitled to a check distribution of less than $5 will not receive a distribution.

inactive account. Moreover, the fact that participants will be compensated on a pro rata basis appears to be both reasonable and equitable. See Wright, 565 F. Supp. 3d at 206-07 (explaining that pro rata distribution to class members and automatic receipt of payment suggested that proposed settlement was likely fair, reasonable, and adequate). Moreover, the court finds the released claims in paragraph 2.38 of the Agreement (doc. no. 65-2 at 7-9) to be reasonable in that they are limited "to those based on the facts alleged in the complaint." Grenier, 344 F.R.D. at 367 (quoting Morgan v. United States Soccer Fed'n, No. 219-cv-01717RGKAGR, 2022 WL 16859651, at *3 (C.D. Cal. Aug. 11, 2022)).

Finally, the court turns to the Agreement's provision for class counsel's attorney fees, which are to be paid after the Settlement becomes final and amount to no more than one-third of the Gross Settlement Amount. The court does not find this percentage to be per se unreasonable, but it notes that such a figure, under the circumstances of this case, gives the court some pause.[5] See In re Ranbaxy Generic Drug Application Antitrust Litig., 630 F. Supp. 3d 241, 245 (D. Mass. 2022) ("As a percentage of the relevant common fund, standard awards in the First Circuit range from 20% at the low end to 33% at the high end."). At the proposed fairness hearing,

---

[5] Under the Agreement, plaintiffs' counsel's attorney fees shall not exceed $283,333. (one-third of the Gross Settlement Amount) and their expenses shall not exceed $150,000. Plaintiffs' counsel also plans to seek case contribution awards for the three class representatives, not to exceed $10,000 each. If the court were to award the maximum of these potential requests, the remaining amount available to the class, not counting other administrative costs, will amount to approximately $386,667.

in addition to explaining the amount of attorney fees requested, the parties should be prepared to discuss how they reached the agreed settlement amount (i.e., how they weighed the potential recovery at trial against the plaintiffs' chances of success at trial).

Still, considering the totality of the factors under Rule 23(e)(2), the settlement proposal, including the plan of allocation, appears fair, reasonable, and adequate at this preliminary stage of approval proceedings. The court therefore preliminarily approves the parties' proposed settlement, pending a fairness hearing.

IV.    Notice and Settlement Administration

Having granted preliminary approval to the parties' Agreement, the court must next consider whether to approve the parties' selection of a settlement administrator and determine whether the parties' proposed notice of the settlement is sufficient. Under Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." "To satisfy due process, the notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Hill v. State St. Corp., No. CIV.A. 09-12146-GAO, 2015 WL 127728, at *14 (D. Mass. Jan. 8, 2015) (quoting In re Prudential Sec. Inc. Ltd. P'Ships Litig., 164 F.R.D. 362, 368 (S.D.N.Y. 1996)). "In general, the settlement notice must 'fairly apprise the prospective members of the

17

class of the terms of the proposed settlement and of the options that are open to them.'" Id. at 15 (quoting Greenspun v. Bogan, 492 F.2d 375, 382 (1st Cir. 1974)).

The court has wide discretion "regarding the type of notice it finds must be provided to class members to satisfy constitutional due process concerns, including notice regarding the objection procedure class members will need to follow for the Court to consider their objections." Grenier, 344 F.R.D. at 369 (emphasis omitted) (quoting Lloyd v. Navy Fed. Credit Union, No. 17-cv-1280-BAS-RBB, 2018 WL 5247367, at *10 (S.D. Cal. Oct. 22, 2018)).

The court has reviewed the plan by which the parties propose to provide absent class members notice of the proposed settlement ("Settlement Notice") and the settlement's provision for a Settlement Administrator. The parties' Agreement provides that certain administrative duties (including providing notice to absent class members, serving as an escrow agent for the Settlement Fund, disbursement of payments to class members, and other such matters) will be performed by a "Settlement Administrator." See doc. no. 65-2 at 10, 20. Subject to the court's approval, the Agreement names Analytics LLC as the parties' proposed Settlement Administrator, a highly experienced administrator of class action claims. The court approves the appointment of Analytics LLC as Settlement Administrator.

The Settlement Notice plan states that the Settlement Administrator will provide notice of the proposed settlement and its terms to the class members via a Short Form Postcard ("Postcard Notice") delivered by first-class U.S. mail (in the form attached as Exhibit A to the Agreement) to each class member's last known

18

physical address. <u>See</u> doc. no. 65-2 at 34-37. The Postcard Notice provides basic information about the settlement and directs recipients to visit a website where additional, detailed information is available in the Long Form Settlement Notice ("Long Form Notice") (in the form attached as Exhibit B to the Agreement). <u>See</u> <u>id.</u> at 38-44.

While the court finds the general Settlement Notice procedure adequate, the form and substance of the notices proposed by the parties will comply with Rule 23(e)(1)(B) and due process <u>only</u> after several corrections are made. To begin, the Postcard Notice states that "[t]he Court has authorized the parties to seek discovery from any person who files an objection, including the production of documents and appearance at a deposition." <u>Id.</u> at 36. While the court does not take issue with the parties' desire to have the option to issue reasonable requests for information to objectors,[6] the court worries that advertising the potential of a document request and deposition in the Postcard Notice may deter would-be objectors from even visiting the settlement website (to view the Long Form Notice) to make an informed

---

[6] <u>See, e.g.,</u> <u>Noll v. Flowers Foods, Inc.,</u> No. 1:15-cv-00493-LEW, 2021 WL 5614752, at *2 (D. Me. Nov. 30, 2021) (allowing parties to "take discovery on an expedited basis regarding the objection from the objector and related third parties"); <u>Edwards v. N. Am. Power & Gas, LLC,</u> No. 3:14-cv-01714 (VAB), 2018 WL 1582509, at *10 (D. Conn. Mar. 30, 2018) ("Class Counsel and Defendant's Counsel may take the deposition of the objecting Settlement Class Member under the Federal Rules of Civil Procedure at an agreed-upon time and location, and to obtain any evidence relevant to the objection."). Notwithstanding counsel's ability to ask objectors for information, the court expects that counsel will make only necessary and reasonable requests that are relevant to the objection.

decision about whether to object.[7] Moreover, unlike the Long Form Notice, the Postcard Notice does not sufficiently advise class members that a settlement will cause class members to release claims against defendants; it only states that class members' rights "may be impacted." Id. at 35. Thus, the Postcard Notice should not advertise that objectors may be subject to discovery requests and depositions and instead make clear the rights that class members will give up if the settlement is ultimately approved. In other words, the Postcard Notice should briefly explain why one may want to object, not underscore a potential inconvenience of objecting.

Turning to the Long Form Notice, that notice states that "Class Counsel intend to seek attorneys' fees equal to one-third of the Settlement Amount plus expenses, not to exceed $150,000." Id. at 42. This sentence has the potential to mislead class members into believing that the attorney fees and costs being sought will together amount to a maximum of $150,000. A revised notice should include the maximum dollar amount of attorney fees being sought. Finally, the Long Form Notice requires that objections be sent to the court, in addition to both class counsel and defendants' counsel. However, as this court explained in Grenier v. Granite State Credit Union, this procedure is redundant and unnecessary because counsel will automatically receive electronic notice of all objections sent to the clerk of the

---

[7] The Long Form Notice adequately warns potential objectors that they may be asked to provide information. See doc. no. 65-2 at 43 ("the Court's Order Granting Preliminary Approval of this Settlement provides that any party to the litigation may, but is not required to, serve discovery requests, including requests for documents and notice of deposition not to exceed two hours in length, on any objector.").

court once they are placed on the docket. 344 F.R.D. at 368–69. As in Grenier, the court is concerned that these unnecessary requirements will deter objectors. Accordingly, the court will accept and consider objections so long as they are sent to the clerk of court.[8]

The parties shall submit new proposed notices reflecting these changes no later than April 9, 2026. The court will review the amended notices on an expedited basis. Once the court approves them, the court will schedule the fairness hearing and other related deadlines.

V.     Objections to Proposed Settlement

As described above, the Agreement affords class members the opportunity to object by sending written notice to the clerk of the court, class counsel, and defense counsel. As already noted, the court shall require written notice of objections to be sent only to the clerk of the court. The court otherwise approves and adopts the objection procedure outlined in the Agreement. See doc. no. 65-2 at 43.

**CONCLUSION**

For all the reasons discussed above, the court grants plaintiffs' unopposed motion for preliminary approval of the parties' proposed class action settlement (doc. no. 65) and finds it likely that the court will be able to certify the proposed

---

[8] The parties must also ensure that the address to which they direct class members to send objections is accurate and consistent across both notices. The proper address is: Clerk of the Court, U.S. District Court for The District of New Hampshire, 55 Pleasant Street, Room 110, Concord, NH 03301.

class for the purpose of settlement. The court appoints Analytics LLC as the settlement administrator and provisionally appoints plaintiffs Adams, Mars, and Miller as settlement class representatives and Capozzi Adler as class counsel. Once the court approves the updated notices, the court will schedule the fairness hearing and other related deadlines. The court approves the objection procedures outlined by the parties, subject to the changes noted above, and directs the parties to submit updated proposed notice forms to bring them into conformity with due process and Fed. R. Civ. P. 23(e)(1) by April 9, 2026.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 25, 2026

cc:    Counsel of Record