UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Debra M. Adams, et al.

v. Civil No. 22-cv-099-LM
Opinion No. 2026 DNH 110 P

Dartmouth-Hitchcock Clinic, et al.

**O R D E R**

Plaintiffs Debra Adams, Danillie Mars, and Michelle Miller (collectively, "Plaintiffs") filed this putative class action against Dartmouth-Hitchcock Clinic, its Board of Trustees, the Administrative Investment Oversight Committee of Dartmouth-Hitchcock Clinic, and "John Does 1-30" (collectively, "Defendants") asserting injuries arising from Defendants' alleged breach of their fiduciary duties to effectively manage and monitor Plaintiffs' retirement plans under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Presently before the court is Plaintiffs' assented-to motion for final approval of class action settlement (doc. no. 72) and Plaintiffs' motion for attorney fees, reimbursement of expenses, and case contribution awards (doc. no. 74). For the following reasons, the court grants Plaintiffs' motion for final approval, and grants in part and denies in part Plaintiffs' motion for attorney fees, costs, and awards.

I. Motion for Final Approval

On or around October 31, 2024, following non-collusive, arm's-length negotiations and substantial exchange of information, the parties reached an agreement to settle their dispute, subject to the court's approval.

On June 5, 2025, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement under the terms of a settlement agreement executed on June 17, 2025 (doc. no. 65-2) and as amended by the Settling Parties with the Amendment to the Settlement Agreement on July 29, 2026 (together, the "Settlement Agreement").[1]

On March 25, 2026, the court issued an order (the "Preliminary Approval Order") granting the Motion for Preliminary Approval of Class Action Settlement. In that order, doc. no. 66, the court conducted an analysis of whether it would likely be able to certify the class for the purposes of settlement and find that the proposed settlement is fair, reasonable, and adequate. The court preliminarily certified the proposed class for settlement purposes, provisionally appointed Plaintiffs as the Class Representatives and their counsel of record, Capozzi Adler, P.C., as Class Counsel, and preliminarily approved the proposed settlement.

On May 12, 2026, the Settlement Administrator sent the Notice of Proposed Settlement of Class Action (the "Notice") to the settlement Class Members as ordered. On August 13, 2026, the court held a fairness hearing regarding the parties' proposed class action settlement.

The court now finds and rules as follows:

1. The Court has jurisdiction over the subject matter of the Action and over all Settling Parties, including all members of the Settlement Class.

[1] Capitalized terms used in this Final Approval Order and Judgment shall have the same meanings ascribed to them in the Settlement Agreement.

2. For purposes of Settlement, and pursuant to Rules 23(a) and (b)(1) of the Federal Rules of Civil Procedure, the Court certifies the following Settlement Class:

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plans, and any Alternate Payee of a Person subject to a Qualified Domestic Relations Order ("QDRO") who participated in the Plans, at any time between March 18, 2016 through March 25, 2026.

3. The Court maintains the appointment of Plaintiffs Debra M. Adams, Danillie L. Mars, and Michelle L. Miller as Class Representatives for the Settlement Class, and Capozzi Adler, P.C., as Class Counsel for the Settlement Class.

4. The Settlement Class has received proper and adequate notice of the Settlement, the Final Approval Hearing, Class Counsel's application for attorney fees and reimbursement of litigation costs and for Case Contribution Awards to the Class Representatives, and the Plan of Allocation. Notice was given in accordance with the Preliminary Approval Order (Doc. nos. 66, 69 & 71). Notice included individual notice to all members of the Settlement Class who could be identified through reasonable efforts, as well as notice through a dedicated website, and provided due notice of the matters set forth in this Final Approval Order and Judgment, and included sufficient information about the procedure for making objections. That notice constitutes the best notice practicable under the circumstances and fully satisfies the requirements of Fed. R. Civ. P. 23 and due process.

5. The Court approves the Settlement and orders that the Settlement shall be consummated and implemented.

6. At the fairness hearing, the court expressed some concern regarding the sufficiency of the settlement amount ($850,000), particularly in light of Class Counsel's initial estimate that the class's damages were around $10 million. The court noted that, under the present settlement, each Class Member would receive (on average) little more than ten dollars. Class Counsel explained that the initial damages estimate, which relied on theories of both imprudent investing and excessive recordkeeping fees, was greatly overestimated because discovery revealed that Defendants had a "colorable argument" that they had a process in place for reviewing the plans' investments. This fact led Class Counsel to determine that the chances of success on the class's investment-based claim were very low, and to instead focus on the record-keeping fee claim. Moreover, Class Counsel's retained expert estimated damages from the alleged excessive recordkeeping fees to be around $4.2 million, so, given the size of the class (over 37,000), each Class Member's individual best-case recovery would have been relatively low. Weighing this against what Class Counsel determined to be a greater-than-fifty-percent-chance of losing (i.e. recovering nothing) on that claim at trial, Class Counsel determined that the present settlement was fair and reasonable. In light of Class Counsel's careful assessment of the possible risks and benefits of continued litigation and considering all the evidence

before the court, pursuant to Fed. R. Civ. P. 23(e), the court finds that the Settlement embodied in the Settlement Agreement is fair, reasonable, and adequate to the Plans and the Settlement Class, and more particularly finds that:

a. The Settlement was negotiated vigorously and at arm's length by Defense Counsel, on the one hand, and Plaintiffs and Class Counsel on behalf of the Settlement Class, on the other hand;
b. Plaintiffs and Defendants had sufficient information to evaluate the settlement value of the Action;
c. If the Settlement had not been achieved, Plaintiffs and the Settlement Class faced the expense, risk, and uncertainty of extended litigation;
d. The amount of the Settlement ($850,000) is fair, reasonable, and adequate, taking into account the costs, risks, and delay of litigation, trial, and appeal. The method of distributing the Class Settlement Amount is efficient and requires no filing of claims. The Settlement terms related to attorney fees do not raise any questions concerning fairness of the Settlement; however, as explained below, the court finds that a slightly lower fee award is appropriate under the circumstances of this case. There are no agreements, apart from the Settlement, required to be considered under Fed. R. Civ. P. 23(e)(2)(C)(iv).

The Class Settlement Amount is within the range of settlement values obtained in similar cases;

e. At all times, Plaintiffs and Class Counsel have acted independently of Defendants and in the interest of the Settlement Class; and

f. The Court received no objections.

7. The Plan of Allocation is finally approved as fair, reasonable, and adequate. The Settlement Administrator shall distribute the Net Settlement Amount in accordance with the Plan of Allocation and the Settlement Agreement. The Settlement Administrator shall have final authority to determine the share of the Net Settlement Amount to be allocated to each Class Member in accordance with the Plan of Allocation approved by the Court.

8. All requirements of the Class Action Fairness Act, 28 U.S.C. § 1711, et seq., have been met.

9. The releases and covenants not to sue set forth in the Settlement Agreement, including Article 8 of the Settlement Agreement, together with the definitions in the Settlement Agreement relating to those releases and covenants, are expressly incorporated into this order and judgment. The releases are effective as of the Effective Date. As of the Effective Date, the Plans and each of the Class Members (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns) fully, finally, and forever

settle, release, relinquish, waive, and discharge all Released Parties (including Defendants) from all Released Claims, even if the Class Member discovers facts in addition to or different from those which the Class Member or Class Counsel now knows or believes to be true with respect to the Action and the Released Claims, and regardless of whether each Class Member receives a monetary benefit from the Settlement, whether each Class Member actually received the Settlement Notice, and whether Class Members objected to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs.

10. The Class Representatives, Class Members, and the Plans settle, release, relinquish, waive, and discharge any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown claims, including Section 1542 of the California Civil Code, which provides: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party." The Class Representatives, Class Members, and the Plans with respect to the Released Claims also waive any and all provisions, rights, and benefits conferred by any law or of any State or territory within the United States or any foreign country, or any principle of common law, which is similar,

comparable, or equivalent in substance to Section 1542 of the California Civil Code.

11. The Class Representatives, the Class Members, and the Plans, acting individually or together, or in combination with others, are permanently enjoined from suing or seeking to institute, maintain, prosecute, argue, or assert in any action or proceeding (including but not limited to an Internal Revenue Service determination letter proceeding, a Department of Labor proceeding, an arbitration, or a proceeding before any state insurance or other department or commission), any cause of action, demand, or claim on the basis of, connected with, or arising out of any of the Released Claims. Nothing herein shall preclude any action to enforce the terms of the Settlement Agreement in accordance with the procedures set forth in the Settlement Agreement.

12. Every Class Member releases the Released Parties, Defense Counsel, and Class Counsel for any claims, liabilities, and attorneys' fees and expenses arising from the allocation of the Gross Settlement Amount or Net Settlement Amount and for all tax liability and associated penalties and interest as well as related attorney fees and expenses.

13. The operative complaint and all claims asserted in the Action are dismissed with prejudice and without costs to any of the Settling Parties and Released Parties other than as provided for in the Settlement Agreement.

14. The court shall retain exclusive jurisdiction to resolve any disputes or challenges that arise as to performance under the Settlement Agreement or any challenges to the performance, validity, interpretation, administration, enforcement, or enforceability of the Settlement Notice, Plan of Allocation, this Final Approval Order and Judgment, or the Settlement Agreement. The Court shall also retain exclusive jurisdiction with respect to applications for awards of attorney fees and Case Contribution Awards to the Class Representatives, and reimbursement of litigation costs.

15. Any motion to enforce this Final Approval Order and Judgment or the Settlement Agreement, including by way of injunction, may be filed in this Court, and the provisions of the Settlement Agreement and/or this Final Approval Order and Judgment may also be asserted by way of an affirmative defense or counterclaim in response to any action involving alleged violation of the Settlement Agreement or the assertion of any Released Claim.

16. If the Settlement Agreement is terminated, this Final Approval Order and Judgment shall be rendered null and void and shall be vacated, and this Action shall for all purposes with respect to the Settling Parties revert to its status as of the day immediately before the day the Settlement was reached. The Parties shall be afforded a reasonable opportunity to negotiate a new case management schedule.

17. With respect to distributions to Class Members who have an Active Account (after allocation decisions have been made by the Settlement Administrator

in its sole discretion), all questions not resolved by the Settlement Agreement shall be resolved by the Plan administrator or other fiduciaries of the Plans, in accordance with applicable law and the governing terms of the Plans.

18. Within three days following the distribution of all settlement payments to Class Members as provided by the Plan of Allocation approved by the Court, the Settlement Administrator shall provide to Class Counsel and Defense Counsel a list of each person who received a settlement payment or contribution from the Qualified Settlement Fund and the amount of the payment or contribution.

19. Upon entry of this Order, all Settling Parties, the Settlement Class, and the Plans shall be bound by the Settlement Agreement and this Final Approval Order and Judgment.

In sum, Plaintiffs' motion for final approval is granted insofar as it does not impact attorney fees.

## II. Plaintiffs' Motion for Attorney Fees, Reimbursement of Expenses, and Case Contribution Awards

The court next turns to Plaintiffs' motion for attorney fees, expenses, and case contribution awards (doc. no. 74). Plaintiffs seek $283,333.33 in attorney fees for Class Counsel (an amount equal to 33% of the Settlement Fund of $850,000.00), $85,840.36 for litigation expenses;[2] and $10,000.00 case contribution awards for

[2] Plaintiffs' motion contained an error purporting to seek $150,000 in litigation expenses. Class Counsel confirmed at the fairness hearing and in a subsequent filing (doc. no. 77 at 2) that Plaintiffs request only $85,840.36.

each of the three Class Representatives ($30,000.00 in total). The court grants Plaintiff's request for litigation expenses and case contribution awards is approved in full for the reasons stated in Plaintiffs' motion (doc. no. 74). However, as explained below, the court finds that a reduced award of attorney fees is appropriate under the circumstances of this case.

"Counsel who recovers common funds for a class is entitled to reasonable attorneys' fees and reimbursement of expenses prior to the distribution of the balance to the class." In re Ranbaxy Generic Drug Application Antitrust Litig., 630 F. Supp. 3d 241, 245 (D. Mass. 2022). "In addition to ensuring that class counsel is fairly compensated, the district court is obliged to function as 'a quasi-fiduciary to safeguard the corpus of the fund for the benefit of the plaintiff class.'" Id. (quoting In re Fidelity/Micron Sec. Litig., 167 F.3d 735, 736 (1st Cir. 1999)).

Calculating attorney fees using the percentage of fund [POF] method "'in common fund cases is the prevailing praxis' in the First Circuit due to its relative efficiency."[3] Wright v. S. New Hampshire Univ., 561 F. Supp. 3d 211, 214 (D.N.H. 2021) (quoting In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 307 (1st Cir. 1995)). "This method functions exactly as the name implies: the court shapes the counsel fee based on what it determines is a reasonable percentage of the fund recovered for those benefitted by the litigation. Thus, the court enjoys an 'extremely broad' latitude to determine an appropriate fee

[3] Class Counsel agrees that the court should employ the POF method.

award in a common fund case under the POF approach." Walsh v. Popular, Inc., 839 F. Supp. 2d 476, 483 (D.P.R. 2012) (quoting In re Thirteen Appeals, 56 F.3d at 309)).

District courts in the First Circuit have looked to the following seven factors to determine the reasonableness of a fee award in a common fund case:

> 1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections relative to the size of the settlement class; (3) the skill and efficiency of Class Counsel; (4) the complexity and duration of the litigation; (5) the financial risks of nonpayment taken on by Class Counsel; (6) the amount of time devoted to the case by Class Counsel; and (7) the awards in similar cases.

Ford v. Takeda Pharms. U.S.A., Inc., Civ. No. 1:21-cv-10090-WGY, 2023 WL 3679031, at *1 (D. Mass. Mar. 31, 2023); accord Walsh, 839 F. Supp. 2d at 483.

Applying these factors, the court finds that attorney fees totaling 25% of the gross settlement amount are appropriate, rather than the 33% ($283,333) requested by Class Counsel. While the settlement amount will benefit over 37,000 Class Members, as noted above, if the court were to accept Class Counsel's requested fee, the average payout of approximately $12.18 per Class Member is relatively modest.[4] There were no objections and the court has no reason to doubt Class Counsel's skill in this complex area of law; however, the court notes that settlement was reached

[4] Assuming the court grants all that Class Counsel requests ($283,333.33 in attorney fees, $85,840.36 in costs, and $10,000 for each of the three class representatives), the net settlement amount available to Class Members will equal $450,826.31, a figure that will shrink even smaller once the costs of administering the settlement are deducted. Given that there are approximately 37,000 Class Members, this will amount to an average payout of less than $12.18 per Class Member.

before full discovery was completed.[5] See Walsh, 839 F. Supp. 2d at 484 ("lack of full discovery 'diminishes the complexity and duration of the litigation' for purposes of assessing fees under the POF approach" (citing In re Puerto Rican Cabotage Antitrust Litig., 815 F. Supp. 2d 448, 459 (D.P.R. 2011))). While this case has been pending for some time (since March 2022), the docket reveals that little in the way of adversarial litigation has occurred: this case settled after the court denied Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and before summary judgment.

Turning to the risks of the litigation, the court acknowledges that in taking this case on a contingent fee basis, Class Counsel faced a significant risk of nonpayment: as explained above, after discovery, Class Counsel estimated their chances of success at trial to be relatively low. Moreover, Class Counsel asserts that they spent 1,906.30 hours litigating this case, resulting in a total lodestar of $1,215,373.75.[6] Comparing this figure to $283,333.33 (the 33% requested), Class

[5] The court does not mean to suggest that insufficient discovery was conducted to allow the parties to reach an informed and reasonable settlement.

[6] "The First Circuit does not require a court to engage in calculating the lodestar method when awarding fees based upon the percentage of the fund method." In re Puerto Rican Cabotage, 815 F. Supp. 2d at 464. However, many courts use a "lodestar cross-check" to ensure that fees awarded under the POF method are reasonable "in light of the amount of work counsel actually performed." Id. "The lodestar cross-check is performed by multiplying the hours reasonably expended on the matter by the reasonable hourly billing rate which then provides the court with the 'lodestar calculation.'" Id. (quotation omitted). "The proposed fee award is then divided by the lodestar calculation, resulting in a lodestar multiplier. The lodestar multiplier is compared to other multipliers employed in similar cases." Id.

Counsel contends that they will receive a fractional 0.23 multiplier: in other words, they will only receive 23% of what they would have billed on an hourly basis. The court acknowledges that this is a low multiplier. See 5 Newberg and Rubenstein on Class Actions § 15:89 (6th ed.) (explaining that for common funds of comparable size, the mean multiplier between 2009 and 2013 was 1.49 (citing Theodore Eisenberg, Geoffrey Miller & Roy Germano, Attorneys' Fees in Class Actions: 2009–2013, 92 N.Y.U. L. Rev. 937, 967 (2017)) [hereinafter Attorneys' Fees in Class Actions]. A lower multiplier is fair in a case like this where the class members are receiving such a small award. A greater POF is not warranted under the circumstances here. See In re Cabletron Sys., Inc. Sec. Litig., 239 F.R.D. 30, 37 (D.N.H. 2006) (explaining the POF method is designed to reduce the potential for manipulation, rewarding wasteful and excessive attorney effort, and "allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" (quoting In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 300 (3d Cir. 2005))); In re Rite Aid Corp, 396 F.3d at 306 ("the lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award").

Finally, a comparison of Class Counsel's 33% request to awards in similar cases also suggests that Class Counsel's requested fee is high. See In re Ranbaxy, 630 F. Supp. 3d at 245 (noting that "[a]s a percentage of the relevant common fund, standard awards in the First Circuit range from 20% at the low end to 33% at the

high end"). While Class Counsel have cited a number of cases in which other district courts have awarded 33%, many of these cases come from outside of this circuit or provide little analysis.[7] By contrast, the court has identified many cases within this circuit with considerably lower awards.[8] See, e.g., id. (20%); Bettencourt v. Jeanne D'Arc Credit Union, No. 17-CV-12548-NMG, 2020 WL 3316223, at *3 (D. Mass. June 17, 2020) (27%); Walsh, 839 F. Supp. 2d at 483 (23%); In re Puerto Rican Cabotage, 815 F.Supp.2d at 463-65 (23%); Latorraca v. Centennial Techs. Inc., 834 F. Supp. 2d 25, 28 (D. Mass. 2011) (25%); In re Am. Dental Partners, Inc. Sec. Litig., No. 08-CV-10119-RGS, 2010 WL 1427404, at *1 (D. Mass. Apr. 9, 2010) (22.5%); New Eng. Carpenters Health Benefits Fund v. 1st Databank, Inc., No. 05-CV-11148-PBS, 2009 WL 2408560, at *1-2 (D. Mass. Aug. 3, 2009) (20%); see also Attorneys' Fees in Class Actions at 951 (between 2009 and 2013 the median attorney fees awarded in the First Circuit was 23% and the mean 26%).

In sum, while the court appreciates Class Counsel's work on this matter and the results they were able to achieve for the Class Members, the court is not convinced that the circumstances warrant the 33% award sought. Weighing all the above factors and taking seriously the court's duty to act as "a quasi-fiduciary to

---

[7] Several of these cases are pre-written proposed orders that judges have simply endorsed with a signature.

[8] The court does not suggest that a 33% fee is never appropriate. See, e.g., Ford, 2023 WL 3679031, at *3 (awarding 33% in ERISA case).

safeguard the corpus of the fund," the court finds that fee award of 25% ($212,500.00) is appropriate. In re Ranbaxy, 630 F. Supp. 3d at 245.

## CONCLUSION

Plaintiffs' assented-to motion for final approval of class action settlement (doc. no. 72) is granted. Plaintiffs' motion for attorney fees, reimbursement of expenses, and case contribution awards (doc. no. 74) is granted in part and denied in part. The court awards Class Counsel attorney fees of 212,500.00 and reimburses Class Counsel in the amount of $85,840.36 in expenses advanced in litigating this matter, to be paid from the settlement fund. The Court awards case contribution awards of $10,000 each for Class Representatives Debra Adams, Danillie Mars, and Michelle Miller, to be paid from the settlement fund. The clerk's office is respectfully requested to enter judgment and close the case.

SO ORDERED.

Landya McCafferty
United States District Judge

August 24, 2026

cc: Counsel of Record